**Walter U. SMITH, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15241.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 14, 1959.

Decided Nov. 25, 1959.

Petition for Rehearing Denied
Dec. 8, 1959.

Bazelon, Circuit Judge, dissented.

Mr. Charles W. Halleck, Washington, D. C. (appointed by this court), for appellant.

Mr. John Jude O'Donnell, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellant met his estranged wife on the street and made such a violent assault upon her that fifty-five stitches were required to close her wounds. At the close of the evidence for the prosecution in his trial under an indictment charging assault with a dangerous weapon, Smith moved for acquittal on the ground of insanity, based on the idea that the Government itself had shown "some evidence" of insanity, and had wholly failed to carry the resulting burden of proving sanity beyond a reasonable doubt. The trial judge held there was no evidence of insanity and so denied the motion. He invited the appellant to offer evidence tending to show he was insane when he committed the crime but the appellant did not accept the invitation. Smith's motion for an instruction on insanity was also denied. Electing to stand on his theory that the prosecution's proof contained "some evidence" of insanity, thus throwing upon the Government the burden of proving sanity, he did not testify and offered no evidence.

On this appeal appellant complains principally that the trial judge erred in not submitting an insanity issue to the jury. He suggests the Government's proof revealed there had been a deterioration in his family and social relationships and in his work habits. He says it showed a history of violent outbursts of temper in which he flew into rages; that he believed, probably without cause, that his wife had been unfaithful to him. He says his attack on her was "bizarre" in that the proof showed he approached her from behind and put his hands over her eyes before he began the attack upon her which continued over a distance of several blocks, and in that he stamped on the foot of a woman in whose house his wife sought refuge and who was attempting to interfere with his attack. Finally appellant quotes the testimony of an officer that he was "not coherent" after the arrest.

These things, appellant contends, constituted "some evidence" of a mental disease or defect which made it the duty of the trial judge to instruct the jury on insanity. He particularly emphasizes the officer's statement that appellant was "not coherent" shortly after the attack was over, and seems to regard that as strong evidence of insanity. It would not be surprising if a sane man were somewhat incoherent soon after he had

engaged in such a violent outburst of temper. We do not regard a lack of coherence in such circumstances as indicative of insanity.

But, interestingly enough, the officer's statement that Smith was "not coherent" was erroneously made, and was contrary to the fact. After the appellant sought to derive advantage from the statement, the witness was recalled and said he had been confused as to the difference between "coherent" and "incoherent" and had intended to say Smith was coherent.[1] That this was true is conclusively shown by the fact that the officer had just finished repeating a perfectly coherent statement which appellant had made to him: that, within fifteen minutes after the arrest "He [Smith] said he cut his wife and he didn't know why he did it except for the fact she had been talking to a man and he just lost his temper." The officer also said the appellant told him he had used a knife which he later threw away. The fact that the police were unable to find the knife probably accounts for the verdict of simple assault only.

To hold that an insanity issue is presented in a criminal case merely because the accused has become increasingly indolent, has a violent temper, and then makes an unprovoked and unusually violent attack upon another because of some concocted grievance, would be tantamount to holding, as many psychiatrists profess to believe, that any person who commits a crime is mentally ill and should receive treatment instead of punishment. We are not prepared to make such a ruling.

One more thing remains to be noticed. In the District of Columbia every juror is given a copy of a booklet called "Jury Service, A Manual for the jury," prepared by the Committee on Improving the Administration of Justice, District of Columbia Branch, American Bar Association. The jurors in this case received and read the handbook and said they would be inclined to be guided by the information contained therein. This, the appellant argues, disqualified them and requires reversal here. The trial judge asked: "Is there any member of the panel who would not follow the law as I give it to you, if it appeared that there was something in this handbook which might be in conflict with the law as I give it to the jury?" There was no response. We have examined the handbook and find it innocuous. Certainly it does not appear that it caused any prejudice to the appellant.

Other errors assigned do not justify discussion.

Affirmed.

BAZELON, Circuit Judge (dissenting).

One ground of the present appeal is that the trial court should have directed a verdict of not guilty by reason of insanity because the prosecution had failed to bear its burden of proof of sanity. This ground of the appeal is untenable. As we said in Wright v. United States, 1957, 102 U.S.App.D.C. 36, 39, 250 F.2d 4, 7, what the prosecution must prove to sustain its burden depends upon the kind of evidence of insanity that has been adduced to bring the issue into the case. The facts and circumstances here brought out by the witnesses, if they contain some proof of insanity so as to bring the issue into the case, also contain sufficient proof of sanity to preclude directing a judgment of acquittal by reason of insanity. The learned trial judge was therefore right in refusing such a direction and determining to submit the issue of mental responsibility to the jury under proper instructions.

The next day, however, the trial judge reversed himself and refused to submit the issue to the jury. That refusal,

---

1. Appellant says the court erred in allowing the officer to be recalled, because he had remained in the courtroom after his first testimony when the rule as to separation of witnesses had been applied. This was within the discretion of the trial judge, and we do not think he abused it.

which is the principal basis of this appeal, was, in my view, reversible error.

We held in Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 389, 190 F.2d 612, 615, that "Sanity is an 'essential' issue which, if actually litigated—that is, if 'some proof is adduced' tending to support the defense—must be submitted to the jury under the guidance of instructions." We added:

"We are aware, of course, that any . attempt to formulate a quantitative measure of the amount of evidence necessary to raise an issue can produce no more than an illusory definiteness. But if some such measure is to be attempted, we think the best approach is that expressed by us in Kinard v. United States, 1938, [68 App.D.C. 250, 253–254, 96 F.2d 522, 525–526], a prosecution for murder in which the trial judge had not submitted the issue of manslaughter to the jury. We said there that ' "The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter or an act performed in self-defense, and yet, so long as there was *some evidence relevant to the issue* of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be matter of law for the decision of the court." ' " 88 U.S.App.D.C. at pages 389–390, 190 F.2d at pages 615–616.

And we pointed out that, under Davis v. United States, 1895, 160 U.S. 469, 16 S. Ct. 353, 40 L.Ed. 499, it was of no consequence whether the "some proof" of insanity be adduced by the defense or the prosecution.

The question here before us, then, is whether, in the totality of the evidence heard by the jury, there was "some

proof" of insanity, requiring submission of the issue to the jury under proper instructions.

The evidence upon which appellant grounded his request for an insanity instruction, all adduced through prosecution witnesses, was, as my brethren summarize it, that appellant had "become increasingly indolent, [had] a violent temper, and then [made] an unprovoked and unusually violent attack upon another because of some concocted grievance * * * ." Added to this summary should be the fact that the circumstances of the attack were such that the jury could have considered them bizarre [1] and the further fact that a police officer testified that appellant was not coherent after the arrest (about which last fact I shall say more below).

My brethren say that to present the insanity issue to the jury in this case "would be tantamount to holding, as many psychiatrists profess to believe, that any person who commits a crime is mentally ill and should receive treatment instead of punishment." I respectfully suggest that they misconceive the role of judge and jury. By sending the insanity issue to the jury, the judge does not decide that the defendant is mentally ill and should be acquitted by reason of insanity. He simply allows the jury to decide the issue on the evidence. It seems to me that not to present the insanity issue to the jury is tantamount to holding, as a matter of law, that *no* person who commits a crime in the circumstances of this case is mentally ill and should receive treatment instead of punishment. I doubt that any court should ever be prepared to make such a ruling.

Whether it is a fact, as my brethren say, that many psychiatrists believe that all criminals are mentally ill or whether, if that is a fact, those psychiatrists are

---

1. Appellant's wife, the victim of the attack, testified that he first placed his hands over her eyes, that he said nothing for a while, and that he then began to beat her and continued the beating as they went down the street for a distance of about a block and a quarter, all the while saying things that made no sense to her. Another witness testified that, as appellant was dragging his wife along the street, he stopped to bind up her wound with a handkerchief; and that, when the police arrived, appellant sat down and held the victim in his arms.

correct in that belief are matters not before us. Nor is it for us to decide whether this appellant was mentally ill when he committed the assault. We need not even decide whether the proof of insanity in the record was sufficient to create a reasonable doubt as to appellant's sanity. Tatum v. United States, 88 U.S.App.D.C. at page 390, 190 F.2d at page 616. The single question before us is whether there was "some proof" of insanity. If there was, it was error to prevent the jury from exercising its prerogative of deciding whether or not appellant should go to a hospital for treatment, rather than to a prison for punishment. To me it is plain that there was "some proof" of insanity.

Perhaps the most significant item in the proof of insanity adduced in the trial was the following testimony of the police officer under cross-examination by defense counsel:

"Q. At the time you talked to him did you advise him that he didn't have to tell you anything? A. I advised him—I asked him what happened.

"Q. You just asked him what happened? A. Yes sir, I did.

"Q. You didn't tell him he had any right not to talk to you or say anything? A. I advised him that he had a right to counsel. He just more or less told me that without me asking.

"Q. Was he coherent at the time? A. No sir, I don't believe he was coherent.

"Q. He was not? A. No, sir.

"Q. And you say he told you he just didn't know why he did this? A. He told me it was more a fit of temper.

"Q. In a fit of rage? A. Yes, sir."

Although the prosecutor then examined the officer on re-direct, he made no attempt to elicit any revision of the above testimony. The next day, however, after both sides had rested and after the trial judge had stated that he would give the jury instructions on the issue of sanity, the prosecutor stated that he thought the officer had meant to testify that the appellant was *coherent*, rather than *incoherent*. There ensued a long discussion in open court, in the course of which the prosecutor said, *inter alia*: "I submit that if that officer were put on the stand, he would tell you that he misunderstood the question * * * ." The officer was present during this discussion and heard all that was said. The court, over objection, then allowed the prosecution to reopen its case to place the officer on the stand again. The witness then testified as follows:

"Q. Officer Owens, yesterday you were asked this question by counsel for Walter U. Smith * * * :

" 'Was he coherent at the time?' To which your answer was: 'No sir, I do not believe he was coherent.'

Now did you understand that question when it was placed to you, sir? A. I was confused with that question. My apologies to counsel and to the Court.

"The Court: I can't understand you.

"The Witness: I was confused about that question, and my apologies to the Court and counsel.

"Q. [Assistant U. S. Attorney]. How were you confused? A. I thought, I was confused by the word 'incoherent' and the word 'coherent.'

"Q. Is it your testimony that you thought that the word used was 'incoherent'? A. Yes, sir, I believe that is right."

On cross-examination, the officer stated that he had heard every word of the preceding argument about what his testimony meant. He further testified that the prosecutor had approached him in the corridor the previous day; that they "had a talk about the word 'incoherent' and 'coherent' "; that the prosecutor explained to him that he had "made a mistake" in the words; and that, when he went to roll call that night, he found in the precinct complaint book an order for

him to report back to the courtroom in the morning. A defense motion to strike the officer's new testimony was denied.

On the strength of the officer's new testimony, my brethren treat the record as showing appellant was coherent after the arrest, rather than incoherent. I do not suggest that it is improper for the prosecutor to attempt to correct mistaken testimony. While the fact that the discussion of the nature of the alleged mistake was conducted in the presence of the witness is disturbing, that was a matter of the trial court's discretion and I need not disagree with my brethren's conclusion that there was no abuse of that discretion. What my brethren disregard, however, is that the prosecutor could very easily have clarified the officer's confusion, if there was any, in his re-direct examination; that rather than follow that natural course, he waited until he could have a private talk with the witness in which he "explained" to the witness the nature of the alleged mistake; and that, only after this explanation, was the witness recalled. Such conduct on the part of the prosecutor is grossly improper. The trial court, of course, knew nothing of these circumstances when he permitted the witness to be recalled. But, the circumstances having come out in the witness' testimony, it was an abuse of discretion to deny appellant's motion to strike the "corrected" testimony.

I would, therefore, hold that the officer's revision of his testimony should have been stricken and would read the record, minus that evidence, as presenting some proof of insanity requiring submission of the issue to the jury. Accordingly, I would reverse the judgment of conviction and remand the case for a new trial.

Another matter which appears in this record deserves comment.

Even before the officer "corrected" his testimony, the trial judge had refused to submit the issue of insanity to the jury on the ground that:

> " * * * There has been no lay testimony—lay, expert or professional testimony that this defendant is suffering from any mental disease.
>
> "Now maybe incoherence might be a symptom in some cases to a practiced, experienced mind, of insanity. But the jury doesn't have that, I don't have that, and you [defense counsel] don't have that capacity. You are not trained in that. * * * what is there here to justify an instruction on insanity? Only an inference that a jury may draw that incoherency shows a mental disease. You don't even have a lay witness to say that he is of unsound mind. That is my difficulty."

The foregoing statement seems to reflect the clearly erroneous view that, unless there is opinion testimony to the effect that evidence offered of symptoms or manifestations of mental disorder or defect does reflect mental disorder or defect, such evidence may not be considered either by the court for the purpose of raising the insanity issue, Tatum v. United States, 88 U.S.App.D.C. at page 390, 190 F.2d at page 616, or by the jury for the purpose of resolving that issue.

Opinion testimony, of course, may be helpful, and even persuasive to the court or jury.[2] But it is crystal clear from

2. An explanation for the failure of the defense to obtain a psychiatric examination and investigation appears from the following:

"Defense Counsel: If it were necessary, your Honor, I perhaps might be able to obtain a psychiatrist, without money I can't pay him, I can't get him. If I could make a phone call to get him to come in, if your Honor will permit me to open my case again, I can put him on the stand and he will tell your Honor that these facts which have been put into the record indicate that it is quite likely that this poor man is suffering from some mental disease or defect.

"The Court: Of course I will let you do that.

"Counsel: Now I have no money. I can't bring him in. This poor man is indigent. I am court-appointed as your Honor knows.

our decision in Tatum v. United States, supra, that such testimony is not essential to raise the issue of insanity. And it is equally clear from our decision in Misenheimer v. United States, 106 U.S. App.D.C. ——, 271 F.2d 486, that the jury may consider "under proper instructions, any symptoms and manifestations of mental disorder" in resolving that issue. As we reiterated in Carter v. United States, 1957, 102 U.S.App.D.C. 227, 237, 252 F.2d 608, 616, 618, "The conclusions, the inferences from the facts are for the trier of the facts."

"The Court: I know. I think if you applied to the Court you probably could have gotten the government to pay for a psychiatrist, to make some showing.
"Counsel: Frankly, your Honor, at this point I am so convinced in my mind

that there is some evidence in the record sufficient to meet the requirements of the law as laid down in this jurisdiction * * *."