**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John H. KELLEY, Defendant-Appellant.**

**No. 15036.**

United States Court of Appeals
Sixth Circuit.

March 11, 1963.

Harry Lewis, Columbus, Ohio, Wright, Gilbert & Lewis, Columbus, Ohio, on brief, for appellant.

Robert A. Bell, Asst. U. S. Atty., Columbus, Ohio, Joseph P. Kinneary, U. S. Atty., Columbus, Ohio, on brief, for appellee.

Before WEICK, Circuit Judge, and BOYD and THORNTON, District Judges.

WEICK, Circuit Judge.

Appellant was tried and convicted by a jury in the District Court on a three-count Information charging that he received wagers in each of the years 1958, 1959 and 1960 and wilfully failed to register and pay the special occupational tax imposed by Section 4411 of the Internal Revenue Code of 1954, in violation of 26 U.S.C. § 7203. He was fined $1,000 and placed on probation for a period of five years.

The principal errors relied upon in this appeal are that the District Court erred in limiting cross-examination of the Government's witness, Esposito, and in threatening defense counsel on two occasions with contempt of court in the presence of the jury during the course of the trial.

On direct examination, Esposito had been asked general questions by Government counsel about placing "wagers" with defendant. He testified that when he had lost about $100 defendant would come to his office to collect. The bets related to football or basketball games. He guessed that 20 to 25 bets had been placed in 1958, about the same number in 1959 and 10 or 15 in 1960. The defendant objected to a number of the questions on the ground that no specific bets or dates were mentioned and that the questions dealt only in generalities. The objections were overruled.

The following took place upon cross-examination:

"By Mr. Bernard:

"Q. Now, you have described a lot of general activity, Mr. Esposito. I want you to name five specific bets that you made with Jack Kelley. I want you to name the amount of the bet, the event upon which you wagered, when you made the wager, and where you made the wager?

"Mr. Bell: Objection.

"The Court: Sustained.

"Mr. Bernard: If the Court please, I think that we have a perfect right to prepare a defense.

"The Court: The Court has ruled. It is not material as to the amount of wagers. It is a question whether he made wagers.

"Mr. Bernard: I would like to know what the wagers were.

"The Court: The Court sustained the objection. You may have to inquire through other sources for it.

"Mr. Bernard: May I ask the question individually? I don't want to impose upon the Court.

"The Court: The Court doesn't intend for you to impose upon it. Go ahead.

"Mr. Bernard: That's right.

"The Court: Now, if he has any recollection I will permit him to answer. I think under the law it is a question whether or not he made wagers, whether it is five dollars, ten dollars, a hundred, or a thousand. It is whether or not he placed wagers. If he has knowledge of any particular wagers the Court will permit him to answer.

"Q. Can you recall five specific bets that you made during the year 1960?

"Mr. Bell: Objection.

"The Court: I don't think this comes down to a specific matter, Mr. Bernard. I think the question involved here is whether or not he received wagers as defined by Section 4421 and in so doing was required to register and pay his special occupational tax. That is the gist of this indictment. We don't care whether he won money, lost money, or whether he bet one dollar or a hundred, but did he wager with this man. That is the question involved. You will confine your questions to that line.

"Q. Name five specific wagers—

"The Court: The Court has ruled two or three times.

"Mr. Bernard: I don't understand the Court, then. This defendant is accused of receiving wagers.

"The Court: I understand, and the Court has advised you that specific amounts are not involved.

"Mr. Bernard: How about the subject matter?

"The Court: Ask him about it, without testifying as to particular wagers.

"Q. Name five specific events upon which you wagered—

"The Court: This is the last time the Court is going to rule. If you want to get in contempt of court you repeat that same question again and you will be in contempt of court.

"Mr. Bernard: I don't understand the Court.

"The Court: I have ruled and I have sustained the objection. Proceed in regular order. This is not a police court, this is a United States Federal Court.

"Q. Isn't it a fact, Mr. Esposito—

"Mr. Bernard: I have no further questions."

As before indicated, the witness had testified to making about 65 wagers with the defendant over a three year period. He did not give any specific date as to any of the bets or any information as to what any particular bet encompassed. He was asked on cross-examination to give specific information as to only five of these bets. These questions were

proper on cross-examination to test the memory of the witness and his truth and veracity. The District Court erred in sustaining objections to the questions.

▮ We find no basis for the District Judge's threat to the lawyer to hold him in contempt for repeating the question in an effort to comply with an erroneous ruling. We do not understand the Judge's reference to the police court. For all this to take place in the presence of the jury was extremely prejudicial to the defendant. The implication was present that defendant's lawyer was indulging in tactics prevalent in a police court which supposedly were not proper. There was no occasion for the Judge to comment disparagingly on any other court. The threat of contempt not only tended to belittle the lawyer in the eyes of the jury, but also to unnerve him and throw him off balance so that he could not devote his best talents to the defense of his client.

After the witness Esposito had been discharged and during the direct examination of the witness Jones, the Court made the following comment:

"The Court: Now in its ruling on your question, Mr. Bernard, the Court was not intending to circumscribe you on testing the veracity or truthfulness of the witness, but your question was a complex, complicated question, stated in general terms, which made it improper. That was the reason for the Court ruling against you on it. Had you asked the man about specific events that might have been different, but when you lumped them all in five specific times without a fixing time, that was the reason for the Court's ruling. If you want to recall that witness and cross examine him further, the Court will permit you to do so. Go ahead."

While the court stated that he was not intending to circumscribe the lawyer on testing the veracity or truthfulness of the witness, the fact is that he did and still maintained that he was correct in doing so. We see nothing complex or complicated in the questions which were asked and we do not believe they were improper.

The lawyer did not recall the witness for further cross-examination probably because he did not know how to frame a question which would meet the requirements as to admissibility imposed by the Judge. In any event, the damage to the defendant's case had already been done.

▮ The Government witness, Slaven, testified on direct examination as to making wagers with defendant, but placed the time in 1954 which was prior to the offenses charged in the Information. The following then took place.

"The Court: Just a moment. The court is telling counsel at this time he wants you to stop your smiling, wants you to stop pointing at the jury with your arm, or one of you is going to be held in contempt. This is not a circus, this is a trial. You are both able lawyers, able lawyers at both tables, and I want you to conduct yourselves according with the ethics of the profession. I have observed too much of it up to this time."

If the Judge did not like the facial expressions of defense counsel or the movement of their arms, he could have admonished them without making another threat of contempt or insinuating that they were unethical in the presence of the jury.

The lawyer's feelings in the matter are best expressed in the closing lines of his argument to the jury. He said:

"I have no more to say to you, ladies and gentlemen. It seems that I have probably reached the end of my luck with the Honorable Judge Underwood, and I am afraid if I say any more he is liable to get real mean with me.

"The Court: No, Mr. Bernard. You are a good lawyer, you know the province of proper argument. You know it is highly improper for

you to attempt to tell the jury what the law is."

Mr. Bernard made no further argument.

In our judgment, these errors were prejudicial and operated to prevent the defendant from having a fair trial. United States v. Koenig, 300 F.2d 377 (C.A. 6).

In view of this disposition of the case it is not necessary for us to pass upon the other errors alleged.

The judgment of the District Court is reversed and the cause is remanded for a new trial.