Donald A. YOUNG, Appellant,

v.

UNITED STATES of America,
Appellee.

Joseph W. SIMMONS, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18615, 18662.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 20, 1964.

Decided March 19, 1965.

Mr. John A. Beck, Washington, D. C.
(appointed by this court), for appellant
in No. 18615.

Mr. Robert C. Maynard, Washington, D. C. (appointed by the District Court), for appellant in No. 18662.

Mr. Jerome Nelson, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and John H. Treanor, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

BAZELON, Chief Judge.

Appellants were convicted of assault with intent to commit robbery and simple assault. Appellant Young was also convicted of unlawful use of an imitation gun. They seek reversal because the trial court (1) excessively interrupted the two defense counsel to criticize them during their questioning of Government witnesses, and (2) failed to conduct a hearing on appellants' allegation that the jury overheard such criticism at bench conferences.

Counsel for appellant Simmons was Robert C. Maynard, Esquire, a representative of the Legal Aid Agency established by Congress "to provide legal representation of indigents" in criminal proceedings before the District Court. D.C.Code, §§ 2–2201, 2–2202. During the trial, the court sharply criticized the Legal Aid Agency. When Maynard requested permission to ask a Government witness if he had given statements to the police or prosecutor in addition to those the prosecutor had revealed, the court stated, "Well, I think you can take [the prosecutor's] word for it. Of course you may ask a question, but we don't practice law at arm's length, Mr. Maynard, in this court." The court then asked Maynard to come to the bench:

"You know, Mr. Maynard, one of the disappointing things to me has been that the Legal Aid Agency has not proved to be, as I had expected it to be, a model of ethics and etiquette and high-level practice.

"The United States Attorney is not going to treat you at arm's length and don't you act at arm's length."

The criticism of defense counsel's request was unwarranted. He was eminently correct in seeking assurance that every Jencks Act statement had been produced. The prosecutor may have had no knowledge of a witness' statements to police or other authorities, or he may have mistakenly believed that relevant materials were not "statements" under the Act, 18 U.S.C. § 3500.[1]

Furthermore, we find no basis for the court's criticism, in this case and in other cases,[2] that counsel associated with the Legal Aid Agency are too aggressive in representing their clients and that they improperly deal with the prosecutor "at arm's length" unlike "the older lawyers." A recurrent argument against the public defender is that, because he and the prosecutors are paid by the public treasury and are in continual contact, there is danger that they will not deal "at arm's length" and the public defender will lack the essential adversary zeal.[3]

1. See, e. g., Holmes v. United States, 284 F.2d 716, 720, 97 A.L.R.2d 782 (4th Cir. 1960); Ogden v. United States, 303 F.2d 724 (9th Cir. 1962); United States v. Aviles, 315 F.2d 186 (2d Cir. 1963).

2. United States v. Jenkins, D.D.C. Crim. No. 208–63, Transcript at 46, 82; United States v. Wynder and Wilson, D.D.C. Crim. No. 5–64, Transcript at 25; United States v. Dixon, D.D.C. Crim. No. 705–63, Transcript at 160.

3. See Dimock, The Public Defender: A Step Towards a Police State?, 42 A.B. A.J. 219 (1956); David, Institutional or Private Counsel: A Judge's View of the Public Defender System, 45 MINN.L.REV. 753, 765–766 (1961); Note, The Representation of Indigent Criminal Defendants in the Federal District Courts, 76 HARV.L.REV. 579, 603–604 (1963); REPORT OF THE ATTORNEY GENERAL'S COMMITTEE ON POVERTY AND THE ADMINISTRATION OF CRIMINAL JUSTICE 35 (1963). Canon 15, Canons of Professional Ethics, provides:

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost

It would appear that the Legal Aid Agency for the District of Columbia should be commended for averting this danger. Of course, the necessity for "arm's length" dealing and "adversary zeal" does not excuse obstructive tactics. But the Agency representative in this case cannot fairly be accused of engaging in such tactics. Indeed, we are aware of no case which has come to this court in which the record reflects the use of such tactics by any Agency representative.

Appellant Young was represented by Bernard M. Dworski, Esquire, a Prettyman Fellow in the Georgetown University Legal Intern Program. The Prettyman Fellows [4] represent indigent criminal defendants in this jurisdiction in conjunction with a program of intensive training in criminal law advocacy. During the trial the court frequently showed impatience with Dworski, suggesting that his questioning was repetitious or pointless. In one instance the court criticized Dworski on the ground that he "argued back to the court" and implied that he lacked "good court manners and urbanity."

While the Prettyman Fellows are young lawyers, they are closely supervised by faculty of Georgetown University and we are aware that they "have had a salutary impact on representation of indigents in the courts of the District." [5] It would appear that the trial judge does not adequately comprehend the role of the Georgetown Legal Intern Program in fostering creation of a highly qualified criminal law bar, both by training advocates and by providing an example for other law schools.

 The instances discussed were not the court's only criticisms of both defense counsel. Interruptions for criticism occurred frequently, and most often during cross-examination of vital Government witnesses. Though the court also interrupted the prosecutor to criticize him, this was less severe and much less frequent than the criticism of defense counsel. The court's continual intervention may well have "tended * * to unnerve [each defense counsel] and throw him off balance so that he could not devote his best talents to the defense of his client." United States v. Kelley, 314 F.2d 461, 463 (6th Cir. 1963). Even if there had been a basis for some of the criticism of defense counsel, this would not justify continuous interruption. "[I]n a jury case, a trial judge should exercise restraint and caution because of the possible prejudicial consequences of the presider's intervention." Jackson v. United States, 117 U.S.App.D.C. 325, 326, 329 F.2d 893, 894 (1964). See Blunt v. United States, 100 U.S.App.D.C. 266, 276–277, 244 F.2d 355, 365–366 (1957).

The court's most severe criticism of defense counsel took place at bench conferences. For one example in addition to those discussed, Mr. Dworski attempted to cast doubt on the robbery victims' identifications by establishing that appellants were handcuffed by the arresting officer and thus made to appear as criminals when they were taken to the robbery scene. The court called counsel to the bench and stated, "You just want to be nasty to cast imputations on the police force. Now stop doing that. * * And using the word shackle. You owe that police officer an apology, really."

---

learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied."
This, of course, applies to a Legal Aid Agency attorney. See Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L. Ed.2d 1060 (1958).

4. They are thus named in honor of Senior Circuit Judge Prettyman of this court.

Each year since 1960, six to nine young lawyers have been selected as Prettyman Fellows from among numerous outstanding applicants throughout the country. See *Pye, Legal Internships; Georgetown's Experiment in Legal Education*, 49 A.B.A.J. 554 (1963).

5. Editorial, 49 A.BA.J. 561 (1963).

■■ At the beginning of the trial's second day, counsel asked to approach the bench, and this colloquy took place:

"MR. DWORSKI: Your Honor, I have spoken to a number of bystanders who were here yesterday and they have told me that they have overheard all of our bench conferences, Your Honor.

"THE COURT: You go back to counsel table. What are you trying to do?

"MR. DWORSKI: I would like to ask for a mistrial, Your Honor.

"THE COURT: There will be no more bench conferences.

"MR. DWORSKI: Thank you."

If the jury heard the bench conferences, the defense may well have been prejudiced. Hence the court should have conducted an inquiry to determine whether the jury heard and was prejudiced by these remarks.[6] The court should not have peremptorily dismissed counsel's motion without even inquiring whether counsel could produce witnesses to substantiate his allegations. We reject the Government's contention that no hearing was required because counsel's objections did not specifically include a request for a hearing. The court's abrupt and imperious dismissal of counsel's objection plainly forecast the futility of further protestation. Defense counsel had already been admonished not to "argue back" after the court had ruled, and accused of lacking "good court manners and urbanity" in daring to suggest that the court might reconsider a ruling.

■ We cannot say with sufficient confidence that the jury did not hear the court's remarks and were not thereby prejudiced. Moreover, the court's extensive interference with defense counsel's cross-examination "may * * * have prejudiced the defendant[s], notwithstanding the strong evidence presented against [them]."[7] And finally, even if no prejudice to the defendants were apparent, the interests of public justice require a trial conducted by one who is a "disinterested and objective participant in the proceeding."[8] Accordingly the convictions must be reversed and the cases remanded for new trial.

So ordered.

DANAHER, Circuit Judge (concurring):

I agree that we should reverse and award a new trial. I think it would have been sufficient for us to say that a jury verdict must depend upon evidence which has been admitted at trial. Prejudicial information simply should not be permitted to reach the jury, whether it be from news accounts, Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), or from audible bench conferences concerning proffered evidence which is subject to exclusion, or from other unauthorized sources. When an issue is raised with respect to such subject matter as had here been questioned, the trial judge may be expected to make a careful examination of the jurors to ascertain to what extent the inadmissible "evidence" may have come to the notice of that jury. Cf. Coppedge v. United States, 106 U.S.App.D.C. 275, 272 F.2d 504 (1959). The judge may thereupon decide whether a mistrial must be granted or whether the jury adequately may be instructed to disregard the information which improperly came to its notice. A wide but wise discretion must be exercised in light of the circumstances.

It is certainly so that a trial judge must employ cautious restraint in interposing himself into the conduct of the trial. Hardy v. United States, 118 U.S. App.D.C. 253, 335 F.2d 288 (1964). In

---

6. See Coppedge v. United States, 106 U.S. App.D.C. 275, 272 F.2d 504 (1959); United States v. Accardo, 298 F.2d 133, 136 (7th Cir. 1962).

7. Jackson v. United States, 117 U.S.App. D.C. 325, 326, 329 F.2d 893, 894 (1964).

8. Billeci v. United States, 87 U.S.App.D.C. 274, 283, 184 F.2d 394, 403, 24 A.L.R.2d 881 (1950).

short, while a judge is more than a mere moderator, care must be taken that a jury not derive some unintended meaning from the attitude and comments of the trial judge. Billeci v. United States, 87 U.S.App.D.C. 274, 283, 184 F.2d 394, 403 (1950). We have made this point previously in various and not totally dissimilar situations. See e. g., Cunningham v. United States, 119 U.S.App.D.C. ——, 340 F.2d 787 (1964), and our orders in cases such as Mihalopoulos v. United States, No. 18675, judgment entered February 5, 1965.

Without going into further detail, it seems clear on this record that the interests of public justice require that a new trial be granted.