**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard E. GORMAN, Defendant-
Appellant.**

**No. 16018.**

United States Court of Appeals
Seventh Circuit.

April 5, 1968.

Rehearing Denied May 9, 1968,
en banc.

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Richard G. Schultz, Asst. U. S. Atty., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

A jury found defendant guilty of failing to file federal income tax returns with the District Director of Internal Revenue in Chicago, Illinois, in the years 1959–1963, inclusive, in violation of Section 7203 of the Internal Revenue Code (26 U.S.C. § 7203). Sentences totaling three years were imposed under the five counts of the indictment.

The evidence showed that although defendant filed income tax returns for the years 1954 through 1958, he failed to do so for the five ensuing years.

During the summer of 1959 defendant was accused of subornation of a juror in the January 1959 criminal trial of his client, Gerald Covelli. Gorman's defense in this action was that the resulting mental stress caused him to neglect filing the tax returns in question. His indictment for subornation of a juror occurred in June 1960. He was acquitted of that offense in December 1962.

In response to a hypothetical question, psychiatrist Dr. Marvin Ziporyn, a de-

fense witness, testified that defendant had "a psychoneurotic reaction, depressive type," but that his ability to reason logically was unimpaired. Dr. Ziporyn also testified that such a psychoneurotic "is aware of reality," and that defendant "knew right from wrong" and was not psychotic. He described Gorman's condition as "not uncommon."

■ Defendant's principal argument is that the District Court erroneously refused to give the following insanity instruction:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

When applicable, such an instruction is to be given in this Circuit in trials commenced after August 1967.[1] However, a defendant must introduce some evidence of insanity before he is entitled to any insanity instruction. Tatum v. United States (88 U.S.App.D.C. 386, 190 F. 2d 612 (1951); Smith v. United States, 106 U.S.App.D.C. 318, 272 F.2d 547, 548 (1959); Hall v. United States, 295 F.2d 26 (4th Cir. 1961). Our review of this record fails to reveal any such proof, so that an insanity instruction was properly denied. Idiosyncratic behavior and irresponsibility are insufficient to warrant such an instruction. Smith v. United States, 106 U.S.App.D.C. 318, 272 F.2d 547 (1959); Smith v. United States, 122 U.S.App.D.C. 300, 353 F.2d 838 (1965), certiorari denied, 384 U.S. 974, 86 S.Ct. 1867, 16 L.Ed.2d 684. In reality, defendant's theory advanced to justify acquittal was lack of willfulness. Such a theory is frequently used in failure to file tax return cases, as distinct from an insanity defense. As Justice Jackson observed in Spies v. United States, 317 U.S. 492, 493, 63 S.Ct. 364, 365, 87 L.Ed. 418, "Petitioner's testimony related to * * *

lack of willfulness in his defaults, chiefly because of a psychological disturbance, amounting to something more than worry but something less than insanity." Here, too, lack of willfulness, not insanity, was Gorman's theory.

■ It is true that defendant did portray his emotional stress, apparently intensified by the subornation of perjury charge, but no evidence was introduced to show that he was insane during these five years. The District Court took account of Gorman's mental condition in instructing the jury as follows:

"Now, you have heard some considerable evidence in this case introduced relating to the defendant's mental and physical condition. Such testimony was introduced or permitted in this trial solely for one purpose and one purpose only and that purpose is so that you may consider whether or not the defendant's mental and physical condition caused the defendant to inadvertently or negligently fail to make his income tax returns for the years 1959 through 1963."

That instruction properly told the jury to consider defendant's "mental condition" before rendering its verdict. It was then for the jury to decide whether the evidence of Gorman's mental condition merited acquittal. Kalven & Zeisel, The American Jury (1966) pp. 301–305.

■ During the cross-examination of Gorman, the prosecutor attempted to examine on the issue of insanity, but the defendant successfully objected that such an issue was irrelevant because "We are only going to the state of mind." Likewise, Gorman's counsel's opening and closing statements did not advance the defense of insanity. A search of the record indicates that this defense was never presented, perhaps because of defendant's expert witness' testimony that Gorman was not psychotic. Since Gorman never tendered the issue of insanity, it was unnecessary for the Government to prove

---

1. United States v. Shapiro, 383 F.2d 680, 687 (7th Cir. 1967). The present trial occurred in September 1966. The history of insanity instructions in this Circuit is contained in Shapiro and United States v. Williams, 372 F.2d 76 (7th Cir. 1967), certiorari denied, 389 U.S. 880, 88 S.Ct. 112, 19 L.Ed.2d 172.

his sanity beyond a reasonable doubt. Smith v. United States, 122 U.S.App.D.C. 300, 353 F.2d 838, 843 (1965), certiorari denied, 384 U.S. 974, 86 S.Ct. 1867, 16 L.Ed.2d 684.

Because of the absence of evidence of insanity and because the defendant objected to any insanity inquiry by the Government, the District Court was justified in concluding that said defense had not been raised. Therefore, the insanity instruction was properly refused.

Gorman also argues that the District Court improperly refused to receive proffered testimony (1) of United States District Judge Perry, who presided at the Gerald Covelli trial and testified for Gorman in his ensuing subornation trial and (2) of George Callaghan, counsel for Gorman's co-defendant in the subornation case, concerning the perjurious character of Covelli. Gorman sought to introduce such testimony to show his lack of willful intent to omit filing his income tax returns during these five years. It would tend to show that Gorman was innocent of the subornation offense, but this had already been shown by Gorman's testimony that he was acquitted in December 1962. The fact that Judge Perry testified for Gorman in his subornation trial and agreed with the acquittal verdict would not show that the indictment had a deleterious effect on Gorman, nor would Callaghan's testimony that Covelli was a self-confessed perjurer. Furthermore, the jury had already heard Gorman's testimony that Covelli had testified in a Texas trial that he would commit perjury to avoid trouble.

■ We agree that the District Court could properly conclude that the offered testimony had insufficient probative value to be admitted. It was of course the trial court's duty to exclude remote evidence. United States v. Maryland & Virginia Milk Producers Association, 20 F.R.D. 441, 442 (D.D.C.1957).

As noted in McCormick on Evidence § 152, three factors justifying exclusion of evidence are: danger of jury prejudice, danger of jury distraction by creation of side issues, and consumption of undue amounts of trial time. All these factors were present here. Juror Laux was personally acquainted with Judge Perry and could have been prejudiced by Judge Perry's appearance as a witness. A retrial of the suborning perjury charges would certainly be a confusing side issue. It would also consume unnecessary time. In our view, the District Court's action in excluding this evidence was well within its power to keep out remote evidence. Continental Ore Co. v. Union Carbide & Carbon Co., 370 U.S. 690, 710, 82 S.Ct. 1404, 8 L.Ed.2d 777.

■ Relying on Carter v. United States, 373 F.2d 911 (9th Cir. 1967), Young v. United States, 120 U.S.App.D.C. 312, 346 F.2d 793 (1965), and United States v. Kelley, 314 F.2d 461 (6th Cir. 1963), Gorman asserts that he was deprived of the effective assistance of counsel because the District Court threatened his lawyers with contempt. In Carter, the conviction was affirmed. In both Young and Kelley, the prejudicial effect on the jury of the trial judges' remarks occasioned the reversals, but here the warning was given outside the presence of the jury. Moreover, in Kelley the trial court had incorrectly limited defense counsel's cross-examination, whereas here defense counsel persisted in attempting to bring before the jury evidence that the District Court had already properly ruled to be inadmissible. It was entirely appropriate for the District Judge to warn Gorman's lawyers of the consequences of their persistence in attempting to prejudice the jury by showing that Judge Perry had appeared as a witness for Gorman in his subornation trial. United States v. Bolden, 355 F.2d 453, 457 (7th Cir. 1965), certiorari denied, 384 U.S. 1012, 86 S.Ct. 1919, 16 L. Ed.2d 1018.[2]

2. Defendant's attack on three other rulings of the District Court in no way shows that he was deprived of effective

assistance of counsel and merits no discussion.

Gorman was not permitted to introduce certain of his cancelled 1959–1963 checks, one series of which was payable to the order of cash and the other series payable to the order of specific payees. These were offered to show his business expenses. Under the statute (26 U.S.C. § 7203), the Government had to show that defendant was required to file a return, that he did not do so, and that his failure to file was willful. Yarborough v. United States, 230 F.2d 56, 61 (4th Cir. 1956), certiorari denied 351 U. S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487. The Government was not required to prove that Gorman owed the Government any tax.

If Gorman had offered evidence that his failure to file was not willful because only a minimal tax was due, the checks would have been admissible. Cf. Womack v. United States, 119 U.S.App. D.C. 40, 336 F.2d 959 (1964). However, he testified that he was knowledgeable in the field of tax law and knew he was obligated to file a tax return if he had gross income in excess of $600, whether or not any tax was due. Therefore, proof that he owed a minimal tax was not relevant. See Silverstein v. United States, 377 F.2d 269, 270–271 (1st Cir. 1967).

To support the admissibility of the checks, defendant relies on Lumetta v. United States, 362 F.2d 644 (8th Cir. 1966). There the Government was permitted to show the corporate income of Stephens Cement Contractors, Inc., of which Lumetta was president, to show "that Stephens was a going concern dealing in substantial amounts of money and operating at a profit; and that had Lumetta filed a return [for Stephens] it would have shown a tax owing to the government." 362 F.2d at pp. 645–646. The evidence was admitted to combat the "defenses interposed," one probably being that no tax was due. 362 F.2d at p. 646. Here the testimony shows that the amount of tax owing was not the reason Gorman did not file his tax returns, so that proof of tax liability was irrelevant.

Defendant also complains that it was unfair to receive testimony from a bookkeeper as to the amount of his paid office rent. Since defense counsel elicited the amounts of the annual payments from this witness, Gorman can hardly object to their receipt. Furthermore, there were no suggestions to the jury that these were Gorman's only deductible expenses.

Defendant's principal brief complains of the phrase "in order to prevent the government from knowing the extent of his tax liability" in the willfulness instruction given.[3] Because this phrase was added by the District Court at the suggestion of Gorman, he cannot now complain of its inclusion. United States v. Echeles, 222 F.2d 144, 152 (7th Cir. 1956), certiorari denied, 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739. Similarly, he cannot in his reply brief raise the deletion of "without justifiable excuse" from the same instruction. See Rule 17(a) of this Court.

Defendant's final point, first asserted in his post-trial motion for acquittal, is that there was no venue in the Northern District of Illinois. Defendant's residence was either in Chicago or suburban Oak Park, Illinois, and his place of business was in Chicago. Therefore, there was venue below if his returns had to be filed with the District Director of the Internal Revenue District in Chicago.

Section 6091 of the Internal Revenue Code of 1954 (26 U.S.C. § 6091) requires individuals to file their income tax returns in the internal revenue district of their legal residence or place of business. Defendant contends that there is no venue on the ground that neither the President nor his delegate, the Secretary

---

3. The willfulness instruction was as follows:

· "The word 'wilfully' used in connection with this offense means deliberately, intentional or with wrongful purpose of deliberately intending not to file a return which the defendant knew he should have filed in order to prevent the government from knowing the extent of his tax liability."

of the Treasury, has established any internal revenue districts under Section 7621 of said Code (26 U.S.C. § 7621), which provides:

> § 7621. Internal revenue districts.
>
> "(a) Establishment and alteration.—The President shall establish convenient internal revenue districts for the purpose of administering the internal revenue laws. The President may from time to time alter such districts.
>
> "(b) Boundaries.—For the purpose mentioned in subsection (a), the President may subdivide any State, Territory, or the District of Columbia, or may unite into one district two or more States or a Territory and one or more States."

This contention ignores Section 7851(b)(2) of the Code (26 U.S.C. § 7851(b)(2)), which provides:

> "§ 7851. Applicability of Revenue Laws.
>
> \*     \*     \*     \*     \*
>
> "(b) Effect of Repeal of Internal Revenue Code of 1939.—
>
> \*     \*     \*     \*     \*
>
> "(2) Existing offices.—The repeal of any provision of the Internal Revenue Code of 1939 shall not abolish, terminate, or otherwise change—
>
> "(A) *any internal revenue district.*" (Emphasis supplied.)

In 1946 the Secretary of the Treasury divided Illinois into two collection districts, with Cook County, in which Chicago and Oak Park are situated, in the First District (11 F.R. 177A, p. 28). Except for changes in nomenclature, Illinois has subsequently retained the same two collection districts. Inasmuch as Chicago and Oak Park are in the First Collection District (now entitled "District Director, Internal Revenue Service, Chicago, Illinois" [4]), venue was properly laid in the Northern District of Illinois. To hold otherwise would mean that no one could be prosecuted for failure to file tax returns anywhere in the United States. Congress intended no such ludicrous result.

Affirmed.