**UNITED STATES of America**

v.

**Alfred C. MEADE.**

**Crim. A. No. 72-070.**

United States District Court,
W. D. Pennsylvania.
April 23, 1973.

Charles F. Scarlata; Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

James H. Logan, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

McCUNE, District Judge.

The defendant was tried and found guilty by a jury in November of 1972 of both counts of an indictment which charged in count No. 1 that defendant knowingly and intentionally distributed approximately 10.5 grams of heroin on October 15, 1971, and in count No. 2 that he distributed 18.4 grams of heroin on October 26, 1971, both offenses being in violation of Section 841(a)(1) of Title 21, U.S. Code and Section 2 of Title 18. The defense was entrapment.

A motion for new trial has been filed assigning as error the following:

(a) That our instructions to the jury on the issue of entrapment were improper.

(b) That our refusal to order the government to bring a confidential informant from St. Louis during the trial was error and it was error to refuse to require the government to identify the informant before trial and disclose his address.

(c) That it was error to refuse to question the jury during the trial whether they had heard any comments of counsel or the court made at side bar during the trial.

(d) That we erred in permitting certain evidence to be introduced which is merely referred to in defendant's brief as evidence that defendant owned a car, a home and other property.

(e) That we erred in refusing to permit defendant to treat government agents as hostile witnesses.

We have carefully reviewed the record and find no merit in the allegations of error. It was proven beyond a reasonable doubt in our view that defendant made the two sales of heroin to an undercover agent of the government and that he did so to make a profit and that he was not entrapped.

The agent, Robert Moffett, of the Bureau of Narcotics and Dangerous Drugs, was introduced to defendant by a so called informant who was known to the defendant. (See pp. 101 and 102). The agent bought heroin from defendant on two occasions.

On the first occasion the agent, the informant, defendant's wife and another

man (unidentified but no doubt defendant's brother) were present in defendant's home (where the agent had gone to buy drugs) when it was decided by defendant that the sale would be made at a bar called Fad's Bar. The informant and the agent went to the bar where they were contacted by Mrs. Meade (defendant's wife) who instructed them to wait for defendant who, some hours later, picked up the two men in his car and made the sale to them in his car.

On the second occasion the same men went to defendant's home where Mrs. Meade was present and after preparation and packaging the heroin was sold in the home. The price was $650.00 for the half-ounce (first sale) and $1300.00 for the full ounce (second sale). The heroin was of such quality that it could be diluted greatly before being injected.

Although the defendant knew the name of the informant we required the government during the presentation of its case in chief to confirm the identity of the informant by name but refused to permit the jury to hear the name due to the statement of the United States Attorney that informant's position was somewhat dangerous.

The government, armed with the heroin which the agent had purchased from defendant according to the agent's testimony, was able to prove, in addition, that defendant's finger prints appeared on one of the envelopes in which the heroin was passed.

▆ At the close of the government's case defense counsel asked for time to subpoena two agents who had been identified by the agent who had made the purchases as his supervisors. Defendant proposed to call the agents as for cross examination, alleging that they were hostile, so that they could be cross examined. We extended the time which had been requested but refused to allow defendant to call the agents as for cross examination. Defendant called them as his own witnesses. There had been no showing that they were hostile or reluctant or recalcitrant. They had not been in court and were merely government agents in the Pittsburgh office of the Bureau. This ruling was discretionary in our view, see Feutralle v. United States, 209 F.2d 159 (5th Cir. 1954), and it is difficult to determine how this ruling hurt defendant in any way. Defendant proposed to call the agents to prove entrapment (p. 192). He called them and questioned them thoroughly (in fact, cross examined them) and they were not hostile or reluctant. The testimony obtained was that defendant was a major narcotics trafficker and this, of course, did not aid defendant in his defense of entrapment. The agents readily admitted that they had used an informant to find out that defendant was a trafficker.

While the first agent, who had testified had not known the whereabouts of the informant and the United States Attorney had not known of his whereabouts, the second agent (Moore) testified that he had called the St. Louis Office of the Bureau and had determined that the informant was in St. Louis, before taking the stand. Defendant then moved that the trial be continued (recessed) and the government ordered to bring the informant from St. Louis, citing Rovario v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We refused to order the government to bring the informant from St. Louis. We had previously refused to require the government to disclose the informant's identity and these rulings are the main errors assigned.

In Rovario v. United States, *supra*, it was said:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the pos-

sible defenses, the possible significance of the informer's testimony and other relevant factors."

In our view *Rovario* did not require either disclosure or that we require the government to bring informant from St. Louis for the following reasons which distinguish *Rovario*:

(a) The sales were made to the agent (who testified) not to the informant.

(b) The defendant knew the informant and in fact knew where he lived in Pittsburgh (pp. 189–190) but had tried to subpoena him belatedly (during the trial).

(c) Defendant's wife (described as present at both sales) sat in court during the trial but was not called to testify as to circumstances surrounding either sale.[1]

(d) There were two sales made here —not a single sale. It is difficult to entrap one twice within eleven days.

(e) We knew that on the defense of entrapment the defendant would testify and we knew that he would be impeached, as well, because he was serving a jail sentence then on a previous drug conviction.

We could not close our eyes to what was obvious, that the informant had introduced the agent to defendant, that the defendant knew the informant, that the agent bought the drugs with the aid of defendant's wife who had elected not to testify as to entrapment or anything else. Under these conditions we did not consider *Rovario* controlling and we submit that our discretion would have been poorly used to interrupt a trial (and a trial schedule) to order the informant found and returned to Pittsburgh under these conditions. We believe we had

discretion in this situation under the ruling in Findley v. United States, 380 F.2d 752 (10th Cir. 1967), interpreting Rule 17(b) of the Criminal Rules. See also United States v. Brenneman, 455 F.2d 809 (3rd Cir. 1972).

Our refusal to question the jury whether they had heard any side bar comments appears at page 191 of the record. We carefully spoke during all side bar conferences and required counsel to speak so that our voices would not carry and we refused, on the basis of what some unidentified spectator had supposedly said and what defendant had said about our voices carrying, to start a voir dire of the jury. It was not alleged that we had made any untoward remarks. It was merely requested that we question the jury generally. This would have opened up a can of worms. Suppose one juror had overheard something about scheduling and another that an objection would be overruled and another that an objection would be sustained. Without going through every side bar conference with the jury it would have been impossible to determine what they had heard much less what they had understood and whether, if they had understood it, the comment would have affected their thinking. Young v. United States, 346 F.2d 793 (D.C.Cir.1965) is not persuasive here, because in *Young* the trial judge had rebuked defense counsel at side bar and it was the single rebuke which might have been prejudicial and which the jury might have heard. We had carefully observed conduct at side bar and were of the opinion that we were not overheard.

The point alleging error in admitting evidence that defendant owned a house and a car and other property is without merit. The heroin was pur-

---

1. The court knew of course that defense counsel could call the wife but that she would be impeached. We had just taken her plea (and had sentenced her) to the charges growing out of her complicity in the matter. The other person present during the sales we understood to be a brother of defendant. He was not present in court. We had been told at the plea of Mrs. Meade that he was a retarded person and we had accepted that statement. We learned when defendant testified that several people knew of the defendant's purchases and sales but none of them were called.

chased in the home and the car and necessarily the jury heard of these things.

■ Finally, our charge on entrapment can be easily read and need not be repeated here. We believe it to be an accurate charge and a clear and proper charge in this case, see United States v. Silver, 457 F.2d 1217 (3rd Cir. 1972). It might be noted that we read defendant's point on entrapment to the jury.

We have carefully reviewed the record and have determined that the motion for new trial should be denied.

