**Wydell E. CHASE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 93–CF–287.**

District of Columbia Court of Appeals.

Argued March 23, 1995.

Decided April 13, 1995.

---

Dennis M. Hart, appointed by this court, Washington, DC, for appellant.

Nancy B. Bukas, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Elizabeth Trosman, and Steven W. Pelak, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and CUSHENBERRY, Associate Judge of the Superior Court of the District of Columbia.*

SCHWELB, Associate Judge:

Wydell E. Chase was convicted by a jury of assault with a dangerous weapon (ADW),[1] possession of a firearm during a crime of violence (PFCV),[2] and carrying a pistol without a license (CPWOL).[3] The convictions arose out of the shooting and wounding of Anthony Thomas. At trial, Chase admitted that he shot Thomas, but claimed to have been acting in self-defense. The evidence showed that both Chase and Thomas were involved in the drug trade and, although their versions differed as to the events that led up to the shooting,[4] the two men evidently quarrelled over an unpaid drug debt.

On appeal, Chase's principal contention is that he was denied a fair trial as a result of the trial judge's statement that he was considering referral to Bar Counsel of certain conduct by Chase's attorney during the course of the trial. Chase now maintains that the judge's reaction was unwarranted and denied him the right to conflict-free counsel by chilling his attorney's zealous advocacy of Chase's cause. We affirm.

**I.**

During the presentation of the defense case, Chase testified with professed certain-

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1989).

1. D.C.Code § 22–502 (1989).

2. D.C.Code § 22–3204(b) (1989).

3. D.C.Code § 22–3204(a) (1989).

4. Oddly, Thomas and Chase each claimed that he owed money for cocaine consigned to him by the other man. Each man depicted himself as the debtor and his adversary as the irate creditor.

ty, both on direct examination and cross-examination, that a prosecution witness named Cassandra Hursey had not been present at the time of the shooting. Rather, he insisted, a woman named Carla Johnson (whose appearance is quite different from Ms. Hursey's) was there with her baby.

Following a luncheon recess, Chase's attorney returned to the subject of Ms. Johnson on redirect examination. Chase now testified that he believed that Ms. Johnson had been present, but that he was not sure. The prosecutor proposed on recross-examination to interrogate Chase with respect to whether he had learned over the lunch recess that Ms. Johnson was in the courthouse and ready to contradict his initial version, and had adjusted his prior testimony in light of that information. Chase's attorney objected, stating: "Your Honor, the only way that he would have learned that would have been through me, because I saw Carla Johnson. That's the attorney-client privilege, and we won't waive that, your Honor."

After conducting some legal research, the judge overruled the objection and authorized the prosecutor's proposed questioning on re-cross-examination. Chase responded by quickly contradicting himself. At first, he denied that he had learned over the lunch break that Carla Johnson was outside and waiting to testify. Immediately thereafter, however, Chase asserted that it was his codefendant's counsel,[5] and not his own attorney, who had told him that Ms. Johnson was "out there."

These events occurred on Friday, December 18, 1992. On that day, the parties completed the presentation of their evidence; Ms. Johnson testified as a rebuttal witness for the prosecution. Subsequently, on the following Monday, the judge expressed his concern about the comment which had been made to him on the previous Friday by Chase's attorney. He indicated that if Chase could be believed—and the judge expressed reservations on that score—then Chase's attorney had made an incorrect representation to the court when she asserted that a privi-

leged communication from her was the only possible means by which Chase could have learned that Ms. Johnson was available to testify. The judge indicated that he was attempting to determine whether he had an obligation to report the matter to Bar Counsel. The judge stated that he was not questioning counsel's integrity, and he made it clear that he recognized a defense attorney's obligation to apprise her client regarding the anticipated testimony of potential rebuttal witnesses, and that he was concerned only with regard to the representation to the court. The judge offered Chase's counsel an opportunity to respond, but she declined: "Your Honor, I'm not going to be able to say anything now."

Counsel then presented their closing arguments. A review of Chase's attorney's argument reveals that it was presented both competently and vigorously. Chase was acquitted of the most serious charge against him—assault with intent to kill while armed [6]—but convicted of the lesser-included offense of ADW, and also of related weapons offenses.

Following the verdict, Chase's attorney filed a motion to withdraw as counsel, alleging that Chase had expressed dissatisfaction with her performance. She made no claim in her motion that her representation had been inhibited in any way by the judge's remarks regarding a possible referral to Bar Counsel. The judge granted the motion to withdraw, and he appointed a different attorney to appear on Chase's behalf at sentencing. A third attorney is representing Chase on this appeal.

## II.

The accused in a criminal case has a constitutional right to the effective assistance of counsel. *Jackson v. United States,* 623 A.2d 571, 585 (D.C.), *cert. denied,* —— U.S. ——, 114 S.Ct. 649, 126 L.Ed.2d 607 (1993). To ensure the full enjoyment of that right, it is essential that the defense attorney be free of any conflict of interest which might dilute her loyalty to her client. *Id.* Chase

---

5. Chase's codefendant, Abdul Jabar Watts, was acquitted by the jury. He is therefore not a party to this appeal.

6. D.C.Code §§ 22–501, –3202 (1989).

contends, in essence, that as a result of the judge's remarks about a possible referral to Bar Counsel, his attorney was inhibited from continuing her vigorous advocacy on his behalf. He suggests that his attorney may have apprehended that further zealous representation would make such a referral for possible disciplinary action more probable. We find no support in the record for Chase's claim.

Even after his trial counsel was replaced, Chase made no claim in the trial court that the attorney's advocacy on his behalf had been impaired in any way as a result of the judge's warning. Specifically, he did not file a collateral attack on his conviction pursuant to D.C.Code § 23-110 (1989), and thus failed to avail himself of a logical avenue for presenting the testimony of his trial counsel— the one person who could testify first-hand as to whether her representation of Chase had been chilled, as Chase now alleges. Our assessment of the question whether Chase was denied representation by conflict-free counsel must therefore be based exclusively upon the trial record.

We have explained in a somewhat analogous area the drawbacks of attempting such an assessment solely on the basis of a trial record:

> In virtually all cases, it is preferable to obtain the testimony of trial counsel so that the court may consider his or her perspective before determining whether counsel was ineffective. Knowledge of the facts facilitates the just resolution of disputes.

*Simpson v. United States,* 576 A.2d 1336, 1337 n. 2 (D.C.1990). Allegations that counsel was ineffective differ in some respects from charges that she had a conflict of interest,[7] but we believe that the reasons for the court's preference for an evidentiary record in ineffectiveness cases apply at least in some measure to situations such as the one now before us.

In the present case, it appeared to the judge—reasonably, in our view—that Chase's attorney may have made a misrepresentation to the court in an attempt to thwart the prosecution's attempt to cross-examine her client regarding a change in the client's testimony. If Chase's testimony after the luncheon recess was true, then he learned of Ms. Johnson's availability to testify in a non-privileged conversation with his codefendant's attorney. Chase's own counsel had previously told the court, however, that Chase could have obtained this information solely through a privileged conversation with her, and she had asserted that Chase therefore could not be cross-examined regarding his receipt of information regarding Ms. Johnson.

Given the prior representation by counsel, the judge dealt with the matter in a temperate, restrained, and judicious manner. He declined to prejudge the issue and made it clear that he was not questioning counsel's integrity. He expressed skepticism as to Chase's veracity, and he offered counsel an opportunity to state her side of the story. Moreover, the entire discussion between court and counsel of which Chase complains occurred outside the presence of the jury. We discern nothing in the record even approaching any impropriety on the part of the judge.

■ Chase has presented us with no authority—and we are aware of none—which would support reversal of a conviction on facts such as those presented here. Indeed, appellate courts have sustained convictions under circumstances in which there has been far more reason to apprehend that a defense attorney's zeal may have been actually or potentially inhibited by the wrath of the trial judge. *See, e.g., United States v. Logan,* 302 U.S.App.D.C. 390, 998 F.2d 1025 (trial judge held defense counsel in criminal contempt and engaged in angry clashes with counsel,

---

7. In cases in which ineffective assistance has been alleged, the defendant must prove both deficient performance and prejudice. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Where a defendant who raised no objection at trial shows that his attorney had a conflict of interest which

actually affected the adequacy of his representation, on the other hand, he "need not go so far as to show that the conflict prejudiced the outcome of the case." *Jackson, supra,* 623 A.2d at 585 (citations and internal quotation marks omitted); *see also Cuyler v. Sullivan,* 446 U.S. 335, 347–50, 100 S.Ct. 1708, 1716–19, 64 L.Ed.2d 333 (1980).

some in the presence of the jury), *cert. denied,* — U.S. — , 114 S.Ct. 569, 126 L.Ed.2d 469 (1993); *United States v. Turner,* 975 F.2d 490, 492–93 (8th Cir.1992) (counsel was held in criminal contempt four times and, on one occasion, was taken into custody; there were also numerous clashes with the court), *cert. denied,* — U.S. — , 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993); *Cooper v. United States,* 403 F.2d 71, 73 (10th Cir.1968) (judge stated in front of jury that defense counsel's remark was "ridiculous"); *United States v. Gorman,* 393 F.2d 209, 212 (7th Cir.) (judge threatened to hold defense counsel in contempt), *cert. denied,* 393 U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 103 (1968). A trial judge has an obligation to prevent improprieties during the trial, and may rebuke counsel for improper conduct. *Logan, supra,* 302 U.S.App.D.C. at 394, 998 F.2d at 1029 (citations omitted). No two cases are the same, but the authorities which we have cited support the proposition that the judge's responsible reaction in this case to the possibility that counsel had made a misrepresentation did not, *ipso facto,* create a conflict of interest for Chase's attorney.

Moreover, there is not the slightest evidence in this record that the judge's actions "actually affected the adequacy of [Chase's] representation." *Jackson, supra,* 623 A.2d at 585. If Chase had sought post-conviction relief pursuant to § 23–110, the trial attorney could have testified, and the court would have had direct evidence on the question whether her advocacy was in fact inhibited or chilled. In the absence of the attorney's testimony, we think it significant that, in her motion to withdraw, filed after the verdict had been returned, trial counsel specified a number of reasons why she could no longer be effective, but made no mention of any perceived or actual chilling.

Finally, the judge's discussion of the possibility of a referral to Bar Counsel occurred after all of the evidence had been presented and after the judge had discussed jury instructions with the attorneys. Because Chase's counsel was permitted to withdraw prior to sentencing, the purported conflict of interest could have affected her performance only during closing argument. Chase has pointed to nothing in that argument to suggest that he received less than competent and vigorous representation. Our own reading of the record confirms that counsel's closing was presented in a thoroughly professional manner. The suggestion that Chase's attorney's representation of her client was inhibited by a purported conflict of interest is therefore unsupported by the record.

### III.

 For the foregoing reasons, Chase's convictions must be and each is hereby

*Affirmed.*[8]

---

**8.** During the examination of Carla Johnson, the prosecutor (improperly, in our view) asked the witness if she had moved out of the neighborhood because of fear. Chase's attorney objected, and the judge sustained the objection before Ms. Johnson could answer. The judge denied a motion for a mistrial, stating that "it was merely a question and there was an immediate objection. I sustained the objection and therefore I won't grant a mistrial." The judge also instructed the jury that a question is not evidence. The judge's denial of the motion for a mistrial was not "unreasonable, irrational or unfair," and we find no abuse of discretion. *Lee v. United States,* 562 A.2d 1202, 1204 (D.C.1989).