**UNITED STATES of America,**
**Appellee,**

v.

**George Burton KUBITSKY, Defendant-Appellant.**

**No. 72–1279.**

United States Court of Appeals, First Circuit.

Heard Nov. 9, 1972.

Decided Dec. 13, 1972.

---

11. *Cf.* Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).

12. *See also*, 84 Harv.L.Rev. 1109, 1210–11 (1971).

Henry D. Katz, Boston, Mass., with whom Joseph J. Balliro, Boston, Mass., was on brief, for appellant.

John B. Wlodkowski, Asst. U. S. Atty., with whom Peter Mills, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

On this appeal from convictions on two counts of robbery from a federally insured bank, 18 U.S.C. §§ 2113(a) and (d),[1] defendant's brief contains an extensive discussion of principles of law, but in most instances exhibits, perhaps perforce, only minor attention to the facts upon which application of these principles depend.

The sole witnesses who identified defendant as one of the robbers were one Soroko and his girl friend, both of whom were accomplices. Their testimony was corroborated in a number of details, and was not damaged on cross-examination. Defendant did not take the stand and produced no witnesses. His procedure was to attempt to impeach Soroko by showing that, while in state prison for another robbery, he had, for personal reasons, become an informer on a large scale, with the implication that his account was untrue. Soroko testified that his then girl friend, later wife, and adopted children, had received funds from the FBI for a safety "relocation," and that he had not been prosecuted for a number of other federal crimes. He conceded, in this regard, that he had been a professional armed robber, making $50,000 to $100,000 a year, but at the suggestion of the court, he claimed the Fifth Amendment when asked on cross-examination to identify and describe these other crimes.

■ Defendant's offer that Soroko had waived his Fifth Amendment rights by testifying in another case was rejected. Even were we to assume that the rejection of waiver was improper, but cf. United States v. Ottomano, 1 Cir., 1972, 468 F.2d 269, acknowledgment and identification of the crimes was later made by an FBI agent, who stated what Soroko had told him. The details concerning the crimes were irrelevant. No prejudicial error remained.

■ Secondly, defendant objected to the recitation by the agent, not to these facts, but to the fact that the agent had checked out all that Soroko had told him regarding these other offences and had found him accurate. Defendant's objection was that in so testifying the agent put the government's stamp of approval on the witness, citing such cases as United States v. Cotter, 1 Cir., 1970, 425 F.2d 450, 453. These cases involved endorsement by a non-testifying United States Attorney. If we should assume that they apply here, defendant overlooks an important circumstance. Not only by implication (whether implication alone would suffice, we need not determine), but by a direct question, defendant sought to suggest that the agent had attempted to induce Soroko to give false

1. Under the rule announced in O'Clair v. United States, 1 Cir., 1972, 470 F.2d 1199, we vacate the conviction under section 2113(a), leaving that of armed robbery, section 2113(d).

testimony in order to obtain convictions. We do not say it was improper for defendant to do this, but it could not possibly be open to him to make the suggestion and then foreclose a full response. The response evoked may have been highly damaging, but one who would pry open a box may expect to have the lid slammed on his fingers.

■ The only aspect of the case requiring any extended discussion is the claim that in the course of his argument the prosecutor improperly called the jury's attention to the defendant's failure to take the stand or to produce a defense. The prosecutor opened and closed. Defendant has no quarrel with the opening. In defendant's argument he stressed Soroko's bad character, and said nothing about the robbery. In reply, the prosecutor overdid somewhat the traditional reply that the government must take its witnesses as it finds them, and then rejoined by criticizing defendant for, assertedly, concentrating his attack on Soroko. In the course of this he said,

> "We heard a very interesting argument by my Brother, but I submit to you it has nothing to do with this case. I think probably 90% of what you heard had to do with Mr. Soroko's past. Nothing to do with this robbery which you are here to decide with respect to whether or not Mr. Kubitsky robbed that bank as Mr. Soroko and as Mrs. Soroko said he did. And I would submit to you that is a recognition by my Brother that he doesn't have a case, that he doesn't have a defense, and that the only thing he can argue here today is a smoke cloud to obscure you as to talking about Mr. and Mrs. Soroko's past. We admit that. They admit that. They are not proud of their past, as any other decent person wouldn't be, and as I told

you at the beginning, this person had a record, he has admitted that, but that is not the issue before you."

No interruption was made by counsel, or by the court, who was a stranger[2] to our prior rulings,[3] but at the close of the argument defendant moved for mistrial. The court saw a problem, that this argument could be taken as calling the jury's attention to the defendant's failure to take the stand or present a defense, but concluded that it was sufficiently cured by a strong charge that a defendant need not take the stand, or present a defense. The subsequent charge, we may observe, was admirably expressed.

We, too, find the prosecutor's argument troublesome. At the same time, we do not regard it as intentionally aimed at commenting upon defendant's failure to take the stand as evidenced in some of our earlier cases. Since the prosecutor found himself in the situation where there were no defense witnesses at all, it was difficult to comment upon the case without at least indirectly touching upon that fact. We addressed ourselves to this circumstance, and to the lack of a "defense," in Holden v. United States, 1 Cir., 1968, 393 F.2d 276, where we found no error. We note, also, that we did not, by our rule announced in Desmond v. United States, ante, n. 3, mean that a prosecutor could not comment upon the absence of witnesses other than the defendant, such as alibi witnesses, that might have been logically expected. See discussion in United States ex rel. Leak v. Follette, 2 Cir., 1969, 418 F.2d 1266. This is sometimes a difficult path. The prosecutor's attempt to follow it in this case might have been better accomplished, but we do not find prejudicial error.

Affirmed.

2. Honorable Richard E. Robinson, Senior Judge of the District of Nebraska, by designation.

3. E. g., Desmond v. United States, 1 Cir., 1965, 345 F.2d 225; note particularly, United States v. Flannery, 1 Cir., 1971, 451 F.2d 880, 882.