Raymond C. **BURLESON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 6645.

District of Columbia Court of Appeals.

Argued Feb. 6, 1973.

Decided June 29, 1973.

Herbert A. Fierst, Washington, D. C., appointed by this court, for appellant.

Michael W. Dolan, Atty., Dept. of Justice, with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John S. Ransom, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

This appeal centers largely around the admission in evidence of a pistol in a trial that resulted in appellant's conviction on a

charge of assault with a dangerous weapon.[1]

The alleged assault occurred on the stairway and in the hall of a hotel at about one o'clock in the morning. Only two witnesses, the complainant and the appellant, testified as to the occurrence. Complainant testified that appellant came at him "swinging the gun around . . . and he kicked me down the stairs and pushed me around, poking me with the gun," that complainant called the police from a telephone in the hall and appellant then ran out the door and down the street, "got in his car and took off."

Appellant testified he went to the hotel to try to collect a bill from complainant,[2] that complainant "grabbed at me" and "I kicked him down the steps," "dropped the bill on top of him while he was laying down," and told him, "I found you and you're going to pay it." Appellant then left the hotel. He denied having a gun with him at the time.

A police officer testified that sometime after midnight there was a radio broadcast to locate a particularly described automobile and it was found at about 1:20 a. m. some twelve or more blocks from the hotel where the alleged assault occurred. The car was parked and unoccupied. A stakeout was set up and at about 5:50 a. m. a car drove up and stopped behind the parked car. In the second car were two persons, appellant's brother who was driving and appellant sitting in the front passenger seat. Appellant got out and entered the parked car and both cars drove away but were soon stopped by the police.

Appellant was arrested and his car searched for weapons but none were found. The police then searched the brother's car and found a .38 caliber revolver under the front seat on the passenger's side. This gun was introduced into evidence under the following circumstances.

The police officer identified the revolver as a .38 caliber taken from the brother's car and identified six rounds of ammunition taken from the gun. The complainant testified that the gun with which appellant threatened him was a loaded black 38, and when shown the gun produced by the officer stated he was "reasonably sure" it was the same weapon but could not be positive because "all 38's look alike." Appellant testified the gun removed from his brother's car belonged to his brother-in-law.

At the beginning of the trial defense counsel had inquired if the government intended to offer the gun in evidence, and, if so, what connection it had with appellant. Government counsel replied that the gun would be identified by complainant "as similar" to the one used by appellant. Defense counsel then stated, and apparently government counsel agreed, that originally appellant's brother had been charged with possession of the gun but the gun had been suppressed as the product of an illegal search, and that defense counsel had not anticipated that the gun suppressed in the other case would be offered in evidence in this case. He asked leave to move in this case to suppress the gun.

The trial court questioned the necessity of introduction of the gun to prove the government's case because there was "a witness that said he saw the gun in his (appellant's) hand, and that is all that is necessary for the assault charge." When the government insisted it wished to put the gun in evidence, the court denied appellant's motion to suppress as "not having been properly made." When the gun was offered in evidence, objection was renewed but overruled, the court saying: "I want the record to show that it is because of the lack of timeliness of the motion."

---

1. D.C.Code 1967, § 22–502.

2. The bill was for hospital expenses incurred by appellant as a result of having been shot by complainant in the previous month. Complainant's wife had been more than friendly with appellant.

Relying upon D.C.Code 1972 Supp., § 23–104(a)(2) and Criminal Rules 12(b)(3) and 41(g) of the trial court which require that a motion to suppress be made before trial "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion," the government argues that the trial court correctly denied the motion as untimely. Appellant says that because the gun was taken from his brother's car and thereafter suppressed, he could not have reasonably anticipated that the gun would be used against him, and consequently his delay should have been excused. The government says that even if the motion had been permitted, it would have had to be denied because of lack of standing by appellant to question search of his brother's car at a time after appellant had voluntarily left the car.[3]

Aside from the question of the timeliness of the motion to suppress and the merits of the motion itself, we think there is a more fundamental question of the admissibility of the gun in evidence, assuming that it had been lawfully seized. The question is, in the words of counsel at trial, "what connection that gun" had with appellant?

■ Real or visual evidence, like any other evidence, is admissible if it has some evidentiary value on some issue in the case, but it is not admissible if it is incapable of affording a reasonable inference as to a matter in dispute. The evidence must have some connection with the defendant or the crime with which he is charged, and should not be admitted if the connection is too remote or conjectural. What then was the connection between the gun and appellant?

■ The only connection was that the gun, similar to one complainant said appellant had used, was found, nearly 5 hours after the alleged assault had occurred and not within the neighborhood of the hotel where the assault took place, in an automobile owned and driven by appellant's broth-

er, and in which a short time before appellant had been a passenger. Would admission of that gun in evidence furnish a reasonable basis for inference by the jury that it or one similar to it was used by appellant? We think not. There was no evidence that appellant owned the gun or had possession of it before or after the alleged assault. It may be argued that appellant, when a passenger in his brother's car, had constructive possession of the gun as he could have reached under the seat and taken it, but there is no evidence he knew the gun was there. Complainant's testimony that he was reasonably sure the gun was the same one he said appellant used, is entitled to little weight because he could point to no identifying mark and admitted that, as far as he was concerned, all 38's look alike. In our opinion any connection between the gun produced and the alleged assault would be purely conjectural.

We are well aware that instruments of crime, such as guns, knives, etc., have been admitted where the identification was not positive, it being held that the lack of positive identification goes to the weight and not the admissibility of the evidence; but before its admission some connection with the accused or the crime must be established. See, for example, United States v. Robinson, 475 F.2d 376 (D.C.Cir., 1973), where gun was obtained from wife of accused and later accused admitted ownership; United States v. Trantham, 145 U.S.App.D.C. 113, 448 F.2d 1036 (1971), where gun was recovered from rear seat of getaway car shortly after a robbery and there was legitimate inference that the occupants were engaged in a joint criminal venture; Pinkney v. United States, 124 U.S.App.D.C. 209, 363 F.2d 696 (1966), where knife was found in patrol wagon sometime after accused was a passenger but had been "accurately described" by a witness prior to being found; Morton v. United States, 87 U.S.App.D.C. 135, 183 F.2d 844 (1950), where murder weapon was not found but evidence that accused

---

3. *See* Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

had a gun two weeks prior to the murder was admitted because prior possession of physical means of committing crime was some evidence of the probability accused did it; State v. Cofer, 73 Idaho 181, 249 P.2d 197 (1952), where gun was found in accused's car 20 hours after the robbery and admitted by accused to be his gun; State v. Minton, 234 N.C. 716, 68 S.E.2d 844 (1952), where gun was shown to have been in possession of accused both before and after crime.

Furthermore, in many, if not all, of the cases where the gun or other weapon is admitted, there is no dispute that a crime was committed and that a weapon was used in committing the crime. The question in those cases is not whether a weapon was used but whether the accused used it. Here the vital issue was whether a gun was used in the altercation. Complainant said accused used a gun; accused says he did not. If no gun was used, the charge of assault with a dangerous weapon had to fall.

In many cases, introduction of a gun similar to that used will play "practically no part in the conviction," [4] but here where use of a gun is the disputed and only issue, introduction of a gun in evidence is likely to have a damaging impact on the jury. A distinguished authority has warned that "there is a general mental tendency, when a corporal object is produced as proving something, to assume, on sight of the object, all else that is implied in the case about it. The sight of it seems to prove all the rest." [5] In other words, the jury here would have a tendency to believe not only that the gun produced was similar to that complainant *said* accused used but also that the accused did in fact use a gun.

Our conclusion is that admission of the gun should have been rejected because its connection with appellant was too conjectural and remote, and that its admission constituted reversible error.

In closing we note, as the trial judge said early in the case, it was not necessary for the government to produce a gun in order to sustain a conviction. If the jury believed complainant's testimony that appellant threatened him with a gun, that was sufficient.

Reversed with instructions to grant a new trial.

---

4. Mitchell v. United States, 110 U.S.App. D.C. 322, 328, 293 F.2d 161, 167 (1961).

5. 7 Wigmore on Evidence § 2129 (3d ed. 1940).