**James S. ADAMS, Appellant,**

v.

**UNITED STATES, Appellee.**

**James A. JONES, a/k/a Sherman Wright, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 10332 and 10481.**

District of Columbia Court of Appeals.

Argued March 8, 1977.

Decided Nov. 3, 1977.

---

1. A claim or counterclaim may also be dismissed for failure to "comply with . . . any order of the court." Super.Ct.Civ.R. 41(b) and (c).

Warren E. Gorman, Chevy Chase, Md., appointed by this court, for appellant Adams.

Simon L. Weker, Washington, D. C., appointed by this court, for appellant Jones.

Lillian A. McEwen, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D.

Pease and Barry L. Leibowitz, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellants were convicted by a jury of second-degree burglary while armed, armed robbery, and assault with a dangerous weapon [1] in connection with the theft of money at gunpoint from the manager of the Black Ulysses Restaurant at 2100 M Street, N.W., on May 9, 1974, and from the manager of the Black Greco Restaurant at 2000 L Street, N.W., on October 21, 1974. The issues before us on appeal are: (1) whether the trial court erred in denying appellants' motions to dismiss the indictment for lack of speedy trial; (2) whether the trial court interfered with the examination of witnesses to their prejudice; (3) whether the introduction into evidence of a gun and automobile tag numbers was improper; (4) whether appellant Adams was prejudiced by the introduction, inferentially, by the government during cross-examination of a pending charge against him for unauthorized use of a motor vehicle and by the attempted impeachment on rebuttal of his alibi witness; (5) whether sufficient evidence was introduced to support the convictions; and (6) whether the court properly sentenced appellant Jones as an adult without making an express finding that he would not benefit from treatment under the Federal Youth Corrections Act. For the reasons which follow, we affirm.[2]

I

Appellants were arrested on October 23, 1974, two days after the armed robbery of the Black Greco. Presentment took place the following day. After a preliminary hearing on November 11, 1974, the grand jury held the case from November 1974 until July 23, 1975, when an indictment issued charging appellants not only with the offense on October 21, 1974, but also with an earlier robbery of the Black Ulysses in May of 1974. Appellants were arraigned on August 4, 1975, and trial commenced on November 13, 1975, thirteen months after their arrest.

■ As appellants state, a speedy trial claim based upon a delay of more than one year has prima facie merit. *United States v. Perkins*, D.C.App., 374 A.2d 882 (1977); *Branch v. United States*, D.C.App., 372 A.2d 998 (1977). The government then has the burden of explaining the reasons for the delay, which are weighted in the balancing test outlined by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[3] Here, approximately eight months of the delay was occasioned by the grand jury's consideration of the evidence against appellants. District of Columbia law requires action by the grand jury within nine months, D. C. Code 1973, § 23–102,[4] and that requirement was met in this case. There was no inordinate delay caused by the court or by the prosecution, and the trial was reset to the earlier date of November 13, 1975, rather than the original date of January 20, 1976, because of appellants' motions to dismiss for lack of speedy trial. Thus appellants were granted rea-

1. D.C.Code 1973, §§ 22–1801(b), –3202; –2901, –3202; and –502, respectively.

2. Appellants' second, fifth, and sixth claims of error are without merit.

3. Length of delay, reason for the delay, the defendant's assertion of his right and prejudice to the defendant.

4. D.C. Code 1973, § 23–102 provides:
   If any person charged with a criminal offense shall have been committed or held to bail to await the action of the grand jury and within nine months thereafter the grand jury shall not have taken action on the case, either by ignoring the charge or by returning an indictment, the prosecution of such charge shall be deemed to have been abandoned and the accused shall be set free or his bail discharged, as the case may be: but, the court having jurisdiction to try the offense for which the person has been committed, when practicable and upon good cause shown in writing and upon due notice to the accused, may from time to time enlarge the time for the taking action in such case by the grand jury.

sonable relief by the court and suffered no apparent prejudice from the one-year interim between arrest and trial.[5]

## II

Appellants objected at trial to the government's introduction into evidence of a gun allegedly used in the armed robberies on the ground that the nexus between the weapon, where it was discovered, and appellants was too remote and conjectural. They rely upon *Burleson v. United States,* D.C.App., 306 A.2d 659 (1973), as support for their contention on appeal that the trial judge erred in admitting the gun into evidence over counsels' objections.[6] Appellants' reliance on *Burleson* is misplaced.[7]

The trial court admitted the gun into evidence after the government had established a proper foundation. One of the robbery victims stated that the gun used in the robbery was identical to the one introduced at trial. The other robbery victim testified that the gun used in the robbery was probably the same as the one introduced at trial. Detective Jefferson then testified that in the course of his investigation of the case he had spoken with Teresa Young (Adams' girlfriend); that Young had instructed him to meet her at an address in the 1100 block of 8th Street, N.W., and that upon arriving, he and three other police officers met Young and a man named "Butch" who led them to the basement of the building where the gun in question was found.[8] We find no error in the trial court's ruling to admit the gun.

The second evidentiary matter of which appellants complain concerns testimony by government witness Allison Hyde.[9] Hyde, a bartender at the Black Ulysses, testified that on the afternoon of October 21, 1974,[10] she requested that the customer present at the bar, Arthur Crites, follow two men and a woman she knew as "Peaches"[11] who had entered and left the Black Ulysses. Hyde suspected that the three persons had been involved in the original robbery of the Black Ulysses in May 1974. Arthur Crites went outside, observed the three persons entering a dark green Plymouth, and jotted down the license tag numbers on a scrap of paper. Police officers talked with both Hyde and Crites on October 21, 1974, at the time they received the paper recording the tag numbers from the manager.

Appellants contend that Hyde's testimony was not admissible unless the actual recorder of the car tag numbers (Crites) testified as to his firsthand knowledge of the tag numbers and the accuracy of his recording in the writing of those numbers. Arguing that Hyde's testimony is inadmissible hearsay, appellants contend that the

5. Appellants complain that they had no notice of charges for the May 9, 1974 robbery until the indictment issued, and thereby were prejudiced in proving an alibi defense. The prosecutor is under no duty to apprise the defendant of additional offenses for which he may be indicted until such time as the indictment itself issues from the grand jury. *See also United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

6. Appellant Adams also complains that he had been promised by the prosecutor handling the case during the plea negotiation stage that the gun would not be introduced at trial, but a different government attorney tried the case and disregarded the earlier promise. Adams claims that he based his plea decision in part upon that promise. According to the government's remark during the bench conference at trial, the Assistant United States Attorney who allegedly made this promise in fact did not recall it. In any event, information exchanged during plea negotiations will not be binding upon the parties deciding to go to trial unless that intention is made clear upon the record.

7. Unlike *Burleson,* the issue in the instant case is not whether a gun was used in committing the crime, *Burleson v. United States, supra,* 306 A.2d at 662, but whether appellant Adams was the person who used the gun.

8. The testimony by Detective Jefferson was proper. *See Smith v. United States,* 70 App. D.C. 255, 105 F.2d 778 (1939).

9. Ms. Hyde was at one time a police officer in England.

10. The suspects were observed just before the robbery of the Black Greco, two blocks away.

11. The woman was Courtney Whitten, who had been employed as a waitress at one of the establishments owned by Auger Enterprises.

general rule in multiparty situations should govern.[12] We disagree with appellants' contention.

■ Government counsel conducted a very limited direct examination of Hyde. Counsel's questions were designed to elicit from Hyde only the fact that the police investigating the robberies had acted on some information provided by a witness. It was appellants' counsel who questioned Hyde as to Crites' motivation when he wrote on the scrap of paper. It was appellants' counsel who thereby opened the door for Hyde's subsequent development of the evidence related to the tag numbers. Appellants cannot complain on appeal that they were prejudiced by evidence relating to a subject that they themselves opened up. *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). *See also United States v. Kubitsky*, 469 F.2d 1253, 1254–55 (1st Cir. 1972), *cert denied*, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 198 (1973); *Dorsey v. United States*, 125 U.S.App.D.C. 355, 372 F.2d 928 (1967).

### III

■ Appellants' final contention is that the rebuttal evidence concerning appellant Adams' mother, Mrs. Arrington, was improperly admitted, prejudicial, a violation of his due process rights, and that the court had abused its discretion in allowing this sort of impeachment. We disagree.

Mrs. Arrington appeared at trial as an alibi witness. The prosecutor attempted to impeach Mrs. Arrington by showing that she had not been truthful before the grand jury in a pending charge against her son. The charge alleged that her son was driving a vehicle that did not have an inspection sticker. On rebuttal, a police officer testified that he had seen Adams park the vehicle in question and several witnesses testified that Adams' fingerprints were found on the vehicle. When recalled by the government, Mrs. Arrington was confronted with her testimony before the grand jury. The government attempted to show that at the grand jury hearing Mrs. Arrington had told the grand jury that Adams could not have been driving the vehicle when he was allegedly seen by the police because Adams was with her at the time. Appellants' counsel objected to the proffered testimony.

■ In general, a party may always demonstrate bias or testimonial motivation of an adverse witness. *E. g., Rhodes v. United States*, D.C.App., 354 A.2d 863 (1976); *Best v. United States*, D.C.App., 328 A.2d 378 (1974); *White v. United States*, D.C.App., 297 A.2d 766 (1972). In addition, the allowed scope of rebuttal of a witness is a matter within the sound discretion of the trial court. *Best v. United States, supra; Howard v. United States*, 128 U.S.App.D.C. 336, 389 F.2d 287 (1967), and cases cited therein. *See also United States v. Robinson*, 174 U.S.App.D.C. 224, 530 F.2d 1076 (1976); McCormick, Law of Evidence § 40, at 81 (2d ed. E. Cleary 1972). There was no abuse of discretion in the instant case. The rebuttal evidence was introduced to impeach Mrs. Arrington by showing her bias; the grand jury testimony was not introduced to show any unrelated criminal conduct. The trial judge gave careful instructions to the jury on the use of impeachment testimony involving prior bad acts of the defendant. The cautionary instructions were given both before the rebuttal witnesses were called and in the closing instructions to the jury.[13] We have carefully reviewed the record herein and conclude that it substantially supports the trial court's decision to admit the rebuttal evidence.

*Affirmed.*

---

**12.** *See Nager Electric Co. v. United States*, 442 F.2d 936, 194 Ct.Cl. 835 (1971).

**13.** The trial judge specifically referred to Mrs. Arrington in his closing instructions to the jury.