Lawrence C. OESBY, Appellant,

v.

UNITED STATES, Appellee (Two cases).

David I. PARKER, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10939, 10980 and 13196.*

District of Columbia Court of Appeals.

Argued Dec. 13, 1977.

* Submitted March 14, 1978.  Decided Feb. 5, 1979.

Wayne M. Lee, Washington, D.C., appointed by this court, for appellant Oesby.

Leslie J. Harris, Public Defender Service, Washington, D.C., for appellant Parker. Silas J. Wasserstrom, Public Defender Service, Washington, D.C., also entered an appearance for appellant Parker.

James F. Hibey, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Joseph B. Valder, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, GALLAGHER and FERREN, Associate Judges.

KELLY, Associate Judge:

Appellants Lawrence Oesby and David Parker were convicted by a jury of two counts of assault on a police officer with a dangerous weapon (D.C.Code 1973, § 22–505(a), (b)); two counts of assault with a dangerous weapon (D.C.Code 1973, § 22–502); and one count of carrying a pistol without a license (D.C.Code 1973, § 22–3204). Appellant Oesby argues here that he

was denied his Sixth Amendment right to effective assistance of trial counsel;[1] appellant Parker raises the related issue that the court's repeated admonitions and criticisms of Oesby's counsel in the jury's presence denied him a fair trial.[2]

Government testimony was that on the morning of January 2, 1975, Marcia Summers argued bitterly with her boyfriend, appellant Parker, whom she had recently spurned. The argument was continued when, about 1:00 p. m., Parker visited Summers at her place of employment. Parker eventually told Summers that he would return at 6:00 p. m. to "scare a hole in [her] heart," a statement which she understood to be a threat to her life. After Parker left, Summers asked a co-worker, Gregory Davis, to call his brother John, a Metropolitan Police Officer. Officer Davis, who was then off-duty, volunteered to pick Summers up at the end of the day and take her home. As she left work with Officer Davis, Gregory Davis, and a friend, Eugene Small, Summers noticed Parker's car coming down the street. Approximately ten minutes later, still in Officer Davis' car, she again noticed Parker's car passing in the opposite direction. She recognized Parker as the driver of the car and Oesby as one of its two passengers. Officer Davis let his brother and Summers out of his car and made a U-turn to follow the Parker vehicle. Before departing the vehicle, Summers said that Parker might be carrying a gun.

Davis and Small followed the Parker car and at some later point flagged down a marked police cruiser occupied by Officers Thomas Gallogly and Jerry Benzing, who agreed to join in the pursuit. The three cars traversed several blocks before Parker stopped for a red light. Officer Davis pulled adjacent to the passenger side of Parker's automobile while the marked cruiser stopped directly behind the vehicle. Davis, getting out of his car with his service revolver in one hand and his badge in the other, approached the Parker car and shouted, "Police." Simultaneously, Officer Gallogly stepped out of the cruiser and walked to the driver's side of the Parker car.

Parker opened his car door and Officer Davis noticed a hand gun being passed between the two men in the front seat. Officer Benzing noticed the same movement. Within five seconds Davis heard gunshots and saw the right front windshield of the Parker car shatter outward. Believing that both the driver and passenger were firing at him, Davis fired at both appellants.

In the meantime, Officer Gallogly, who tried to open the driver's door, noticed a gun in Parker's hand. He then glanced across the front seat and saw that Oesby was leveling a second gun at him. Gallogly reacted at once by firing two shots at Oesby, both of which missed their target. The Parker car then sped off, followed by both the cruiser and the Davis car. The cruiser lost the Parker car in traffic but Davis continued the chase to North Capitol Street where the occupants of the Parker car abandoned their automobile and fled. Appellants were later apprehended.

I

■ Oesby's contention on appeal to the contrary, the test in this court for determining whether a defendant has received effective assistance of counsel is governed by our decision in *Angarano v. United States,* D.C. App., 312 A.2d 295 (1973), *petition for reconsideration denied,* 329 A.2d 453 (1974) (en banc), which adopted the effectiveness standard of *Bruce v. United States,* 126 U.S.App.D.C. 336, 379 F.2d 113 (1967).[3] Al-

---

1. Counsel on appeal, who was not trial counsel, filed a motion for new trial based on ineffective assistance of counsel. The motion was denied and an appeal was taken from that denial. The appeals were then consolidated in this court.

2. Appellants raise other issues on appeal which, in relation to appellant Oesby, we need not reach. Appellant Parker's contentions are addressed in parts II and III of this opinion.

3. This court has not adopted the standard for measuring ineffective assistance of counsel enunciated by our circuit in *United States v. DeCoster (DeCoster I),* 159 U.S.App.D.C. 326, 329, 487 F.2d 1086, 1089 (1973). *But see Monroe v. United States,* D.C.App., 389 A.2d 811 (1978), where we adopted the *McMann v. Richardson* standard for reviewing claims of ineffective assistance in a pretrial setting. *See*

though the *Bruce* standard was set in a collateral attack proceeding, this court has used that test in disposing of issues of counsel's effectiveness raised on direct appeal. *See, e. g., Proctor v. United States,* D.C. App., 381 A.2d 249 (1977); *Horton v. United States,* D.C.App., 377 A.2d 390 (1977); *Woody v. United States,* D.C.App., 369 A.2d 592 (1977); *Johnson v. United States,* D.C. App., 364 A.2d 1198 (1976); *White v. United States,* D.C.App., 358 A.2d 645 (1976); *Terrell v. United States,* D.C.App., 294 A.2d 860 (1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973). Representation by counsel is deemed ineffective where the accused demonstrates "gross incompetence" which "has in effect blotted out the essence of a substantial defense." *Bruce v. United States, supra,* 126 U.S.App.D.C. at 339–40, 379 F.2d at 116–17. The standard requires that a convicted defendant show that counsel was grossly incompetent and that counsel's incompetence blotted out the essence of his defense.

■ The right to effective assistance of counsel attaches before trial, *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and extends through the post-trial proceedings; consequently, we examine trial counsel's conduct chronologically from the time of the pretrial suppression hearing.[4] At that hearing, counsel called as a witness the owner of the car in which appellants were riding, apparently for the purpose of testifying that he saw no bullet holes in the windshield of the automobile. The relevance of this testimony in the context of a hearing on a motion to suppress statements and identification is not apparent, yet the court allowed counsel

to proceed to a point where he failed to qualify the witness as being able to determine whether the holes in the windshield were made by bullets. The court then struck the testimony as irrelevant.

Counsel also alleged at the suppression hearing that he had filed a motion to dismiss the indictment for failing to comply with D.C.Code 1973, §§ 22–501 and 32–505(a).[5] Neither the court nor the prosecutor was aware of any such motion having been filed, so the court refused to entertain the motion.

Additionally, the record reveals numerous examples of counsel's incompetence at trial.[6] For example, during cross-examination of Officer Gallogly, counsel attempted to impeach the officer by reading from a transcript of a pretrial lineup. Counsel was warned by the court not to read the transcript into evidence, but he continued to do so. At side bar, the prosecutor revealed that while counsel was attempting to impeach Gallogly by use of a prior inconsistent statement, he unfortunately was reading from a prior statement of a different police officer.

■ Counsel waived opening statement and first addressed the jury before presenting Oesby's defense. His statement, in its entirety was:

> Ladies and gentlemen of the jury, we shall prove conclusively to your satisfaction that Mr. Oesby was not only not there but was described by Officer Gallogly as a man with a clean-shaven face and by other officers in such a manner as to confuse and contradict each other. If

*McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (effective representation is that which is "within the range of competence demanded of attorneys in criminal cases"), quoted in *Monroe v. United States, supra* at 819.

4. Even before the suppression hearing, counsel failed to appear at a pretrial status hearing when, among other things, the trial date was set.

5. The transcript reflects that counsel alleged failure to comply with "§§ 22–501 and 3202–

505(a)." D.C.Code 1973, § 22–501 makes it a criminal offense to assault another with the intent to kill, rob, rape or poison. D.C.Code 1973, § 32–505(a) is nonexistent. Counsel probably intended D.C.Code 1973, § 22–505(a), assault on a police officer.

6. *One explanation for counsel's unfortunate performance is the fact that he was suffering from a disease which he testified on the motion for new trial occasions substantial memory loss.*

we prove to your satisfaction that this is so, we shall, at the proper time, ask for the proper verdict.

The purpose of an opening statement for the defense is to explain the defense theory of the case, to provide the jury an alternative interpretative matrix by which to evaluate the evidence, and to focus the jury's attention on the weaknesses of the government's case. Counsel's statement in this case was at best confusing and unilluminating. It did little to inform the jury of any weaknesses in the government's case, and supplied only a bare bones description of the defense theory.

In presenting the defense case, counsel sought to call Marcia Summers, who had testified as a key government witness. The court summoned counsel to the bench for a proffer as to what testimony counsel would elicit and the following colloquy ensued:

Counsel: I proffer her testimony to be that she visited with Mr. Davis (sic) while he has been incarcerated on this charge.

The Court: Mr. Davis has never been incarcerated on this charge. Who is Mr. Davis?

Counsel: Well, the other defendant.

Counsel for Appellant Parker: Mr. Parker? I object to that, Your Honor.

The Court: What would that have to do with it?

Counsel: I think it has a lot to do with it. Her testimony—

The Court: What is the relevancy?

Counsel: It goes to her credibility.

The Court: You could have used that while she was on cross-examination to attack her credibility. You can't put her on to attack her credibility. You had the opportunity to cross-examine her. . .

Later, counsel called Officer Gallogly, who had also previously testified for the government. The court again asked counsel for a proffer:

Counsel: If Your Honor please, my proffer is that this gentleman did file an affidavit and in that affidavit he stated that Oesby was the driver of the car.

The Prosecutor: Your Honor, counsel cannot call a witness in this case simply to impeach him. The time for this was during his earlier testimony.

The Court: No, he could have done it in his direct. You can't call him to impeach him now. You had your opportunity to impeach him.

Counsel: I don't want to impeach him.

The Court: Well, that's what you're doing. He's your witness that you called and what you are doing is impeaching him and you cannot proceed that way. You said you were recalling him regarding the lineup, [counsel]. You may question him about that lineup.

Counsel: Very well, Your Honor.

Immediately thereafter, counsel questioned the witness in apparent disregard of the court's ruling:

Counsel: Officer Gallogly, did you testify at the preliminary hearing—

The Prosecutor: Objection.

The Court: Objection sustained. I've already told you what you can ask. You've already had an opportunity to cross-examine this witness. You will not reiterate what has already been done. You may ask him only to the purpose which you told me that you were going to ask him.

During further examination of Officer Gallogly, the court sustained an objection for repetitious questioning. Counsel was asked once again to approach the bench, where he was admonished and informed that this was his fourth incidence of repetitious questioning. Trial then resumed with counsel asking the witness the very question to which there had just been an objection.

In the course of re-direct examination of Larry Bush, a witness for the defense, counsel asked whether Mr. Bush had heard Officer Gallogly testify at the preliminary hearing that appellant Oesby was beardless. In sustaining an objection to the question, the court stated in the presence of the jury:

That is the most blatant misstatement of the testimony that I've ever heard.

The objection is sustained.

Counsel: May we refer to the transcript, if Your Honor please?

The Court: You may refer to whatever you have, but you will not make any further misstatements. That's twice you've done it this morning.

At still another point in the trial, counsel had a photograph marked for identification and asked Oesby's wife to identify the persons in the photograph and indicate when it was taken. Counsel then sought to pass the photograph to the jury without laying the proper foundations as to its accuracy or reliability. After Mrs. Oesby had concluded her testimony, counsel requested permission to reopen his case so that he could ask her further questions. When asked at the bench what he had in mind, counsel proposed questions which had already been asked and answered by the witness just a short time before.[7]

In response to the trial court's inquiry of what instructions were desired, counsel replied: "Just the usual, if Your Honor please," without requesting, at the very least, those standard instructions that pertained to this particular case.

Counsel's closing argument was inexcusable. Not only did it contain inaccuracies and irrelevancies, counsel even failed to argue the theory of defense to the jury. He first told the jury that Marcia Summers identified appellant Oesby from three-quarters of a block away, while proceeding south on Thirteenth Street, a characterization of Summers' testimony which bears little resemblance to the actual testimony. Summers testified that she observed the Parker car at a distance of eight to ten feet from the Davis car in which she was riding while the Parker car was proceeding south on Eleventh Street. Counsel continued:

Now, let's stop and think for a moment why Mr. Oesby would want to be present,

to attack Marcia, if he was in fact the cousin of Mr. Parker. There's no doubt but what he is Mr. Parker's cousin. There is no doubt that he didn't go into the store with Mr. Parker and there is no doubt that he was not present.

At best, this incoherent statement can be viewed as irrelevant. At worst, it can be interpreted as planting in the minds of the jury a motive for Oesby's presence at the scene: *i. e.*, to aid his cousin, Parker, in avenging Parker's jealousy. After other comments which were either meaningless or implied no logical inferences, counsel commented that

. . . Circumstantial evidence can never prove a case. There's got to be some direct evidence that Oesby was present so that you can tie him in to this case.

I ask you in all fairness, in all honesty, that you acquit Mr. Oesby.

Thank you.

The display of incompetence in closing argument was not what counsel said, but what he failed to say, for he failed to mention any defense evidence. The defense theory which had emerged was misidentification, and the linchpin of that theory was the existence of Oesby's full beard.[8] Even the prosecutor conceded the crucial importance of whether Oesby had a full beard on January 2, 1975, the date of the offense. Two defense witnesses testified that he did. In addition, a photograph purportedly taken around that date, and depicting Oesby with a beard, was sponsored by one of those witnesses. The record shows that this was the only positive defense evidence adduced by counsel, yet counsel made no mention of this evidence in summation.

Finally, counsel's representation of Oesby at the time of sentencing matched his performance during trial. We have said: "The right to effective assistance of

---

7. At the bench, the court responded:

. . . You're trying this case about as bad as I've ever seen a case tried. She has already testified that he had a beard on the 2nd and I'm not going to allow you to carry me to the extreme in this case.

8. Officer Gallogly, one of the only two persons to identify appellant Oesby as a passenger in the Parker car, testified that this passenger had long sideburns and no beard on his chin.

counsel at the sentencing stage of a proceeding is guaranteed by the Constitution." *O'Dell v. United States*, D.C.App., 221 A.2d 443, 444 (1966), quoting *Gadsden v. United States*, 96 U.S.App.D.C. 162, 165, 223 F.2d 627, 630 (1955). *See United States v. Johnson*, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973). A defense attorney's performance at sentencing is subject to certain standards of measurement.[9] Among other things, his responsibility includes familiarizing himself with the sentencing alternatives available to the court,[10] and familiarity with sentencing alternatives requires knowledge of statutory limitations on the court's discretion. In this case, counsel requested that the court place Oesby on probation; however, Oesby had previously been convicted of a felony. Therefore, the statutory minimum sentence here was one year imprisonment.[11] After this fact was explained to counsel by the prosecutor, counsel urged imprisonment of one to three years, to run concurrently with the sentence that Oesby was then already serving.

In addition, it does not appear from the record that counsel reviewed the presentence report which was made available to him before the sentencing hearing. This too is contrary to the standards set forth by the American Bar Association.[12]

We think it self-evident that the total of the incidents heretofore recounted amount to gross incompetence on the part of Oesby's trial counsel and turn now to the question of whether this incompetence was so prejudicial to Oesby as to blot out the essence of a substantial defense. *Bruce v. United States, supra*, 126 U.S.App.D.C. at 339–40, 379 F.2d at 116–17.

The burden of proving prejudice that an appellant bears in urging a claim of ineffective assistance of counsel to this court is heavy indeed. *See Thornton v. United States*, D.C.App., 357 A.2d 429, 435, *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). Moreover, a substantial defense lost due to incompetence must be shown to be a defense as a matter of law and one that is available from facts known or obvious to the trial attorney. *Angarano v. United States, supra* at 300.

As we stated, the only defense theory argued in this case was misidentification. Two of the many government witnesses, Officer Gallogly and Marcia Summers, identified Oesby as the passenger in the Parker car. Because Officer Gallogly's identification was based, in part, on a suggestive photographic array which was suppressed,[13]

---

9. *See* American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 8.1 (Approved Draft 1971).

10. Standard 8.1 of the ABA Standards Relating to the Defense Function, reads as follows:
    (a) The lawyer for the accused should be familiar with the sentencing alternatives available to the court and should endeavor to learn its practices in exercising sentencing discretion. The consequences of the various dispositions available should be explained fully by the lawyer to his client.
    (b) Defense counsel should present to the court any ground which will assist in reaching a proper disposition favorable to the accused. If a presentence report or summary is made available to the defense lawyer, he should seek to verify the information contained in it and should be prepared to supplement or challenge it if necessary. If there is no presentence report or if it is not disclosed, he should submit to the court and the prosecutor all favorable information relevant to sentencing and in an appropriate case be

prepared to suggest a program of rehabilitation based on his exploration of employment, educational and other opportunities made available by community services.

11. D.C.Code 1973, § 24–203(c) provides in pertinent part:
    For a person convicted of—
    (1) a violation of section 22–505 (relating to assault with a dangerous weapon on a police officer) occurring after the person has been convicted of a violation of that section or of a felony, either in the District of Columbia or in another jurisdiction;
    * * * * * *
    the minimum sentence imposed under this section shall not be less than one year, and the maximum sentence shall not be less than three times the minimum sentence imposed nor more than the maximum fixed by law.

12. *See* note 10 *supra*.

13. The array from which Officer Gallogly selected and identified Oesby as the passenger in the Parker car was found to be unduly sugges-

the identification was tenuous. Officer Benzing could not identify the passenger; nor could Officer Davis, his brother Gregory, or his friend, Eugene Small. As for Marcia Summers' identification, she at no time had a better opportunity to observe Oesby than did Officer Davis, his brother, or Eugene Small. Moreover, under the conditions in which she observed the occupants of the Parker car, her identification was impeachable. It was nighttime, both cars were moving, and Summers was in the backseat of Officer Davis' car (directly behind the driver) observing the Parker car while it was travelling in the opposite direction. Her field of vision was obscured by the drivers of both the Davis and Parker automobiles and by the tinted windshield of the Parker car. The fact that Summers knew Oesby was her former boyfriend's cousin, and that the two often accompanied one another strengthens her identification testimony, but it could have also colored her judgment as to the identity of the passenger in the Parker auto. To be sure, Summers admitted on cross-examination that she could not see far enough to tell if the passenger had a moustache. Yet none of these facts relating to the identifications or the lack thereof were effectively brought out during the trial or argued to the jury in summation.[14]

■ The cited examples of counsel's ineptitude exceed by far mere errors of judgment which may be disclosed by subsequent events or hindsight. *See United States v. Hammonds,* 138 U.S.App.D.C. 166, 425 F.2d

597 (1970). We do not purport to disapprove legitimate strategic or tactical judgments and recognize that the right to effective assistance of counsel does not require that counsel's performance be without error or that counsel undertake what appear to be fruitless tasks.

■ In applying the *Angarano* test for reviewing the question of effectiveness of counsel, we follow the lead of those courts which apply a "totality of the circumstances" test. *See, e. g., Cooper v. Fitzharris,* 551 F.2d 1162, 1166 (9th Cir. 1977); *Jones v. Henderson,* 549 F.2d 995, 997, *cert. denied,* 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 103 (5th Cir. 1977); *Spencer v. Warden,* 545 F.2d 21, 23 (7th Cir. 1977); *United States v. Faulkner,* 538 F.2d 724, 729–30 (6th Cir.), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 640, 50 L.Ed.2d 624 (1976).[15] And in so doing, we conclude that in the case of appellant Oesby reversal is compelled as there has been the clearest proof of actual prejudice. *See Thornton v. United States, supra,* 357 A.2d at 435, quoting *United States v. Clayborne,* 166 U.S.App.D.C. 140, 146, 509 F.2d 473, 479 (1974).

## II

Appellant Parker cites two independent rationales for reversal: (1) that conduct of codefendant's counsel interfered with his right to a fair trial, and (2) that introduction of certain real evidence, to wit a revolver and an air pistol, was error in that the evidence lacked sufficient probative val-

tive and therefore ordered suppressed by the trial court following a hearing on appellant's motion.

14. Counsel has a duty to conduct an independent investigation of the facts and circumstances of a given case. *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948). *See Hampton v. United States,* D.C.App., 340 A.2d 813, 817 (1975). We must agree with Oesby's assertion that his trial counsel's independent investigation in this case was minimal, and that this too contributed to his incompetence. One example which is reflected in the records is that after the government had put on witnesses who testified to finding a cartridge and gun near the scene of the crime, Parker's counsel asked the court's indulgence to investi-

gate the circumstances. When asked whether he too wanted an opportunity to investigate, Oesby's trial counsel declined. Parker's counsel's research produced a key defense witness, especially for Oesby in light of his misidentification theory. This witness testified that the person who dropped the gun and cartridge could not possibly have been either of the appellants because of a significant height difference between the man he saw and appellants.

15. Factors of consideration were the nature and seriousness of the crime charged, the evidence susceptible to production by the defense, and the experience and capacity of defense counsel.

ue to overcome its inherently prejudicial effects. We find neither argument persuasive.

It is important to note that Parker does not argue that the trial judge directly interfered with his right to a fair trial. Reply Brief for Appellant (Parker) at 4 n.4. Rather, it is his contention that the actions of Oesby's counsel disrupted the trial process, and that the trial judge's responses in fact exacerbated, rather than mitigated, that disruptive behavior—with a consequent adverse impact on Parker's defense.

■ Appellee maintains that this court cannot reverse Parker's conviction unless we find plain error. *Hurt v. United States,* D.C.App., 337 A.2d 215 (1975). Appellant contends that *Hurt* is distinguishable on its facts. Nevertheless, there did exist opportunity for appellant to take action to protect against possible prejudice resulting from this situation and appellant did not so act. He could have requested a severance pursuant to Super.Ct.Cr.R. 14 at any time during the trial. He could have requested immediate cautionary instructions. In fact, appellant, in his brief, suggested a series of remedial measures that the court, apparently sua sponte, could have taken. Because appellant did not pursue, for whatever reason, any of those avenues of protection, we now apply a plain error standard of review.

■ The constitutional right to a fair trial guarantees, among other things, that the proceedings will be conducted in an atmosphere of judicial calm. *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Throughout much of appellant Parker's case, the jury was subjected to hearing repeated exchanges between Oesby's counsel and the trial court. These exchanges came about when the trial court allowed Oesby's counsel to interrupt the examination of witnesses whom he had previously examined. Additionally, the court permitted Oesby's counsel to proceed with his case in such a disorganized manner that the testimony of Parker's only witness was presented between the testimony of two of Oesby's witnesses. Subsequently, encounters between the court and Oesby's counsel were entangled in the presentation of Parker's defense.

■ The question to be answered here, however, is not whether Oesby's counsel disrupted the trial, but whether the disruption caused by Oesby's counsel prejudiced Parker's case. *Hurt v. United States, supra; Williams v. United States,* D.C.App., 293 A.2d 484 (1972). That these questions are distinct and several accounts for the unique nature of this case. While the case law of this jurisdiction is replete with situations in which the trial court allegedly interfered with the orderly management of a defendant's case, we have not addressed the question of the spillover effects in a multiple defendant situation. It is obvious that it is more difficult to prove prejudice where the court's conduct is not directed in any manner other than inferentially at the individual alleging disruption and unfair trial.

Indeed, appellant Parker cites only secondary harm resulting from exchanges between Oesby's counsel and the court. He argues that his counsel was interrupted in presenting his case and that the court's comments created an inference of guilt in Parker. We cannot agree that either of these allegations on this record mandate a new trial.

Although the record reflects that Oesby's counsel did interrupt the presentation of Parker's case on at least three occasions,[16] these interruptions cannot be said to have violated due process. Surely, Parker's case was inconvenienced, but that inconvenience does not rise to a level sufficient to justify a new trial.

---

**16.** Oesby's counsel interrupted the taking of testimony by Parker's counsel. He has allowed to reopen his case after Parker's counsel had examined his only witness, thus doubtlessly obscuring Parker's defense. Finally, Oesby's counsel was permitted to reopen his closing argument after Parker's counsel had completed his own.

The prejudice in terms of jury inference of guilt is equally minimal. Where the court's comments directed at the merits or even the tactics of either appellants' defense, our holding might have been different. But such was not the case. The court was frustrated at the inability of Oesby's counsel to present the case in the form in which the law requires. He made no comments, however, concerning the merits of the case. Statements such as "I denied you the right to bumble along the way you are bumbling," and "That is the most blatant misstatement of the testimony I've ever heard," can only be interpreted as comment upon Oesby's counsel's abilities, not upon the merits of Parker's case.

We recognize that a trial judge is accorded broad discretion in supervising trial proceedings, but we also recognize that this discretion is to be tempered by the exercise of restraint and caution. *Young v. United States*, 120 U.S.App.D.C. 312, 346 F.2d 793 (1965). It is accepted that judicial admonishment of counsel in the presence of jurors might well affect a jury verdict. *See, e. g., McIntyre v. United States*, D.C. App., 283 A.2d 814, 815 (1971); *Williams v. United States*, D.C.App., 228 A.2d 846, 847–48 (1967); *Jackson v. United States*, 117 U.S.App.D.C. 325, 326, 329 F.2d 893, 894 (1964). However, absent a showing of actual prejudice sufficient to stimulate a motion for severance or request for immediate cautionary instructions, we cannot find that the actions of Oesby's counsel or the trial judge rise to the level of plain error necessary to warrant reversal.

### III

Appellant Parker makes one additional assignment of error. He argues that the chrome-plated revolver and the air pistol allegedly used during the incident should not have been admitted into evidence because their probative value is outweighed by their prejudicial effect. We cannot agree.

If appellant's contention, that the guns were more prejudicial than probative, were true, then it would have been reversible error to admit them into evidence. *Burleson v. United States*, D.C.App., 306 A.2d 659 (1973); *Coleman v. United States*, D.C.App., 295 A.2d 896 (1972). In *Burleson*, we spelled out the considerations that should be made in evaluating the introduction of real evidence:

> Real or visual evidence, like any other evidence, is admissible if it has some evidentiary value on some issue in the case, but it is not admissible if it is incapable of affording a reasonable inference as to a matter in dispute. The evidence must have some connection with the defendant or the crime with which he is charged, and should not be admitted if the connection is too remote or conjectural. . . [*Burleson v. United States, supra* at 661.]

Although this court found, in *Burleson*, that the introduction of a gun into evidence was reversible error, that case is distinguishable from the case at bar. In *Burleson*, the government could not show a convincing connection between the gun and the defendant. The gun was found "nearly 5 hours after the alleged assault had occurred and not within the neighborhood [in which the incident took place] . . . ." *Id.* The situation here is materially different. The gun (revolver) was found shortly after the incident and within one block of where Oesby and Parker abandoned their car.

It is not in dispute that the incident involved an exchange of gunfire. The government presented evidence, which, if believed by the jury, would place a revolver and an air pistol in the hands of Parker and his coactor. The government presented witnesses whose testimony, if believed by the jury, would authenticate the guns as being those that were seen in the car in which appellant was riding. Since the guns had some connection with the crime and the appellants, it was not error to admit them into evidence and show them to the jury.

### IV

Since we find, in Nos. 10939 and 13196, that appellant Oesby was denied a fair trial because of ineffective assistance of counsel,

we reverse and remand for a new trial. As to appellant Parker, No. 10980, finding no error in the trial below and no interference with his right to a fair trial, we affirm his convictions.

*So ordered.*

GALLAGHER, J., concurs in the result.